**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**May 14, 2020**

**FOR THE TENTH CIRCUIT**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JUVENAL REYES-VARGAS, a/k/a
Juvenal Reyes, a/k/a Juvenal Vargas-
Reyes,

     Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

------------------------------

NATIONAL IMMIGRATION PROJECT
OF THE NATIONAL LAWYERS
GUILD,

     Amicus Curiae.

No. 17-9549

_____

**Appeal from the Board of Immigration Appeals**
**(Petition for Review)**
_____

Aaron Tarin (Lory D. Rosenberg with him on the briefs), of Immigrant Defenders Law Group, PLLC, West Valley City, Utah, for Petitioner.

Jonathan K. Ross, Trial Attorney, Office of Immigration Litigation (Joseph H. Hunt, Assistant Attorney General, and Chad A. Readler, Acting Assistant Attorney General, Civil Division; Margaret Kuehne Taylor, Senior Litigation Counsel, Office of Immigration Litigation, with him on the brief), United States Department of Justice, Washington D.C., for Respondent.

Elizabeth G. Simpson, National Immigration Project of the National Lawyers Guild, Boston, Massachusetts, for amicus curiae on behalf of Petitioner.

_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

In this appeal, we review a Board of Immigration Appeals (the "Board" or "BIA") ruling that an Immigration Judge (IJ) had no jurisdiction under 8 C.F.R. § 1003.23(b)(1) to move sua sponte to reopen Juvenal Reyes-Vargas's removal proceedings. In particular, the Board ruled that this regulation removes the IJ's jurisdiction to move sua sponte to reopen an alien's removal proceedings after the alien has departed this country (the regulation's "post-departure bar").

We review the Board's interpretation of its regulation using the framework announced in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), which clarifies when and how courts defer to an agency interpreting its own regulations. Under that case, we can defer to the Board's interpretation only if we conclude, after rigorously applying all our interpretative tools, that the regulation presents a genuine ambiguity and that the agency's reading is reasonable and entitled to controlling weight.

Applying this framework here, we conclude that the regulation is not genuinely ambiguous on the issue in dispute—that is, whether the post-departure bar eliminates the IJ's jurisdiction to move sua sponte to reopen removal proceedings. In fact, the regulation's plain language conclusively answers the question. The post-

2

departure bar applies to a party's "motion to reopen," not to the IJ's own sua sponte authority to reopen removal proceedings. So we do not defer.

Accordingly, we grant Reyes-Vargas's petition for review, vacate the Board's decision, and remand for further proceedings. On remand, the Board must consider Reyes-Vargas's appeal from the IJ's ruling declining to move sua sponte to reopen his removal proceedings. More specifically, the Board must review the IJ's conclusory decision that Reyes-Vargas had not shown "exceptional circumstances" as required before an IJ can move sua sponte to reopen removal proceedings. As his showing, Reyes-Vargas informed the IJ that the Idaho state court had vacated his predicate aggravated felony conviction—aggravated battery against his wife—that had furnished the basis for his removal. This question belongs to the agency. We simply decide that it has jurisdiction to answer it.

## BACKGROUND

In 1992, Reyes-Vargas, then a thirteen-year-old boy, arrived in the United States with his family as a lawful permanent resident. By July 2014, Reyes-Vargas had married. That month, his wife reported to police that Reyes-Vargas had beaten her in their Idaho home, forced her into the basement, and restrained her there with a belt fastened around her neck. Her brother-in-law later freed her after happening by the house with her child. Consistent with her report, police saw bruises, abrasions, and red marks on her body. The police arrested Reyes-Vargas, and prosecutors soon charged him with two Idaho felonies, aggravated battery and attempted strangulation, and one misdemeanor, false imprisonment. In December 2014, Reyes-Vargas pleaded

3

guilty to two of the charges, aggravated battery and false imprisonment, after consulting with his attorney, and two months later, the court sentenced him to ten years' imprisonment. But Reyes-Vargas's criminal-defense attorney had failed to advise him of the immigration consequences of pleading guilty to this felony conviction, namely, its rendering him removable from the United States on two statutory grounds. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felony), (a)(2)(E)(i) (domestic violence) (2012).

On August 20, 2015, the Department of Homeland Security (DHS) served Reyes-Vargas with a notice to appear for a removal proceeding. The notice advised him of the above two statutory grounds for removal. On October 26, 2015, after a hearing, an IJ ordered Reyes-Vargas removed from the United States. Reyes-Vargas waived his appeal, and the next month he was deported.

In July 2016, Reyes-Vargas's immigration counsel filed in the Idaho state district court a motion for post-conviction relief, asserting a *Padilla* violation. *See Padilla v. Kentucky*, 559 U.S. 356, 359–60 (2010) ("[C]onstitutionally competent counsel would have advised [the alien] that his conviction . . . made him subject to automatic deportation."). In August 2016, the Idaho court granted the motion and vacated his felony conviction.

About seven months later, in March 2017, Reyes-Vargas filed in the Immigration Court a "Motion to Reopen *Sua Sponte* and Terminate Removal

4

Proceedings."[1] R. at 96, 102 (some capitalization removed). There, he asked the IJ to exercise its sua sponte authority to reopen his removal proceedings based on what he asserted were compelling circumstances. The government opposed Reyes-Vargas's request.[2] As pertains here, it argued that the regulation's post-departure bar deprived the IJ of jurisdiction even to consider Reyes-Vargas's request for sua sponte relief. Alternatively, the government argued that if the IJ had jurisdiction to do so, Reyes-Vargas had "failed to justify the use of the Immigraton [sic] Judge using his sua sponte authority."[3] *Id.* at 92 (capitalization removed).

---

[1] According to Reyes-Vargas, "[o]n September 24, 2016, [he] requested that the Office of Chief Counsel (OCC) stipulate to a joint motion to reopen due to the vacature [sic] of the underlying criminal case." R. at 97. But the OCC declined. *Id.* Stipulated motions to reopen carry no time limitation. *See* 8 C.F.R. § 1003.2(c)(3)(iii) (2016).

[2] As its first ground opposing Reyes-Vargas's request, the government argued that any statutory motion to reopen was untimely. But in the agency proceedings, Reyes-Vargas had conceded this point and pursued sua sponte relief instead. On appeal, he argues for the first time that his motion should be equitably tolled and considered timely. But "[t]he issue of equitable tolling must be exhausted through the [Board] in order for this court to reach the issue." *Mahamat v. Gonzales*, 430 F.3d 1281, 1283 (10th Cir. 2005) (citations omitted); *see also* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ."). Reyes-Vargas never raised equitable tolling to the IJ or the Board. In his IJ filing, he even acknowledged that he "ha[d] no remedy other than moving [for the IJ] to use its sua sponte authority to reopen removal proceedings." R. at 99. Thus, this argument is unexhausted, and we do not consider it.

[3] The government treated Reyes-Vargas as having collaterally attacked his removal order, obliging him to demonstrate "a gross miscarriage of justice." R. at 92. But as we read the Board's precedent, an agency's sua sponte reopening of removal proceedings and an alien's collateral attack on a removal order are two different things. *See In re J–J–*, 21 I. & N. Dec. 976, 976, 984 (B.I.A. 1997) (applying an

5

The IJ denied Reyes-Vargas's motion by merely checking a box marked "[for] the reasons stated in the [government's] opposition to the motion." *Id.* at 76. Reyes-Vargas appealed to the Board, arguing that the IJ's decision was unreasoned and erroneous and "failed to provide any justification." *Id.* at 37. On appeal, the Board declined to reverse and remand, despite acknowledging that the IJ's decision might be "unreasoned." *See id.* at 2–3, 37. The Board concluded that the agency's post-departure-bar regulations deprived it and the IJ of jurisdiction to move sua sponte to reopen Reyes-Vargas's removal proceedings. Reyes-Vargas filed a petition for review.

## DISCUSSION

### I. Our Jurisdiction

The Immigration and Nationality Act (INA) "gives the courts of appeals jurisdiction to review 'final order[s] of removal.'" *Mata v. Lynch*, 135 S. Ct. 2150, 2154 (2015) (alteration in original) (quoting 8 U.S.C. § 1252(a)(1)) (citing 28 U.S.C. § 2342). But "we do not have jurisdiction to consider a petitioner's claim that the [Board] should have sua sponte reopened the proceedings because there are no standards by which to judge the agency's exercise of discretion." *Jimenez v. Sessions*, 893 F.3d 704, 708–09 (10th Cir. 2018) (internal quotation marks, citation, and

"exceptional circumstances" test for sua sponte reopening); *In re La Grotta*, 14 I. & N. Dec. 110, 111–12 (B.I.A. 1972) (applying a "gross miscarriage of justice" standard to a collateral attack on a prior removal order outside the sua sponte context).

6

alterations omitted). Because Reyes-Vargas's petition requested that the IJ move to sua sponte reopen his removal proceedings, the government has argued that we lack jurisdiction in this case.[4] But the Board never got to the merits of Reyes-Vargas's request for the IJ to exercise authority sua sponte. Instead, the Board ruled that the IJ lacked jurisdiction to move sua sponte to reopen Reyes-Vargas's removal proceedings.

We have jurisdiction to review that ruling. *See Salgado-Toribio v. Holder*, 713 F.3d 1267, 1271 (10th Cir. 2013) (noting that when the Board makes a legal determination, "[w]e do have jurisdiction to review" if there are "questions of law" presented (internal quotation marks omitted) (quoting 8 U.S.C. § 1252(a)(2)(D))); *see also Pllumi v. Att'y Gen. of the U.S.*, 642 F.3d 155, 160 (3d Cir. 2011) ("[W]hen presented with a [Board] decision rejecting a motion for *sua sponte* reopening, [a court] may exercise jurisdiction to the limited extent of recognizing [reliance] on an incorrect legal premise."); *Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009) ("[W]here the Agency may have declined to exercise its *sua sponte* authority because it misperceived the legal background[,] . . . remand to the Agency for reconsideration in view of the correct law is appropriate.").

Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we now turn to the Board's decision.

---

[4] At oral argument, the government reversed its position, conceding our jurisdiction to hear this appeal.

7

## II.     Standard of Review

Both the IJ and the Board rendered a decision in this case, but "[b]ecause a single member of the [Board] affirmed the IJ's decision in a brief order, we review the [Board]'s opinion rather than the decision of the IJ." *Neri-Garcia v. Holder*, 696 F.3d 1003, 1008 (10th Cir. 2012) (citations omitted). Ordinarily, we review the Board's legal rulings de novo. *See, e.g.*, *Ferry v. Gonzales*, 457 F.3d 1117, 1126 (10th Cir. 2006). But here, the Board's decision hinged on its interpretation of a regulation it administers,[5] so our review turns on the deference framework announced in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019).

### A.     *Kisor* Deference

For years, courts have "often deferred to agencies' reasonable readings of genuinely ambiguous regulations." *Kisor*, 139 S. Ct. at 2408 (discussing *Auer v. Robbins*, 519 U.S. 452 (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)). Under *Auer*, courts deferred to an agency's interpretation of its regulation "unless plainly erroneous or inconsistent with the regulation," even if the court would have interpreted it differently. 519 U.S. at 461 (internal quotation marks and citation omitted); *see also Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 613 (2013) ("It is well established that an agency's interpretation need not be the only possible reading

---

[5] "The Board administers the INA," Brief for Respondent at 14, so *Kisor* applies, *see* 139 S. Ct. at 2414 (explaining the basis for deference is that "we presume that Congress intended for courts to defer to agencies when they interpret their own ambiguous rules").

of a regulation—or even the best one—to prevail."). But critics have long assailed this deferential approach,[6] perhaps leading the Supreme Court in *Kisor* to reexamine the *Auer* rule. In *Kisor*, a divided Supreme Court reaffirmed the general *Auer* rule with three significant limitations on judicial deference. 139 S. Ct. at 2408–09 ("*Auer* deference retains an important role in construing agency regulations. But even as we uphold it, we reinforce its limits. . . . The deference doctrine we describe is potent in its place, but cabined in its scope.").[7]

First, courts shall not defer "unless the regulation is genuinely ambiguous." *Id.* at 2415 (citing *Christensen v. Harris County*, 529 U.S. 576, 588 (2000); *Seminole Rock*, 325 U.S. at 414). This means that "if there is only one reasonable construction of a regulation[,] then a court has no business deferring to any other reading." *Id.* Without genuine uncertainty, deference "would 'permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation.'" *Id.* (quoting *Christensen*, 529 U.S. at 588). In resolving any questions of ambiguity, "a court must exhaust all the 'traditional tools' of construction." *Id.* (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)). "[A] court cannot wave the ambiguity flag just because it found the regulation impenetrable on first read." *Id.*

---

[6] Justice Scalia offered a high-profile critique. He expressed concern that agencies would write ambiguities into their own regulations, "allow[ing] agencies to make binding rules unhampered by notice-and-comment procedures." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 111 (2015) (Scalia, J., concurring).

[7] In a concurring opinion, Justice Gorsuch described the Court's decision to keep *Auer* "more a stay of execution than a pardon" that left *Auer* deference "on life support." *Kisor*, 139 S. Ct. at 2425 (Gorsuch, J., concurring).

Instead, a court must "carefully consider the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Id.* (internal quotation marks, citation, and alteration omitted).

Second, "[i]f genuine ambiguity remains, . . . the agency's reading must still be reasonable," meaning "it must come within the zone of ambiguity the court has identified after employing all its interpretive tools." *Id.* at 2415–16 (internal quotation marks and citation omitted) (noting that "an agency can fail" step two).

Third, a court must consider "whether the character and context of the agency interpretation entitles it to controlling weight." *Id.* at 2416 (citations omitted) (noting that "not every reasonable agency reading of a genuinely ambiguous rule should receive *Auer* deference"). In determining "controlling weight," courts consider the reasons supporting deference in the first place. *Id.* ("The inquiry on this dimension does not reduce to any exhaustive test."). Considerations include: (1) whether "the regulatory interpretation . . . [was] actually made by the agency," *id.* (meaning it must be the "authoritative" or "official position" of the agency (internal quotation marks and citation omitted)); (2) whether the "agency's interpretation . . . in some way implicate[s] its substantive expertise," *id.* at 2417; (3) and whether the "agency's reading of a rule . . . reflect[s its] fair and considered judgment," *id.* (internal quotation marks and citation omitted).

With this, we turn to *Kisor* step one. In doing so, we consider whether the regulation is ambiguous in light of both the regulation and its framework, meaning we "carefully consider [its] text, structure, history, and purpose" as if we "had no

10

agency to fall back on." *Id.* at 2415 (internal quotation marks, citation, and alteration omitted). Doing this, we conclude the regulation lacks ambiguity, so we cannot defer to the Board's interpretation. And under the regulation's unambiguous language, we hold that the IJ had jurisdiction to move sua sponte to reopen Reyes-Vargas's removal proceedings despite his departure from the United States.

III.    **Reopening Removal Proceedings**

A.    **Legal Background: 1940 to 2016**

In 1940, Congress created the Board as a decision-making body for immigration disputes. *See* Regulations Governing Departmental Organization and Authority, 5 Fed. Reg. 3502, 3503 (Sept. 4, 1940). Soon after, "the Attorney General authorized [the Board] to reopen concluded immigration proceedings at its discretion. 8 C.F.R. § 90.9 (1941) (authorization to hear motions); 8 C.F.R. § 150.8 (1941) (discretion to reopen)." *Contreras-Bocanegra v. Holder*, 678 F.3d 811, 814 (10th Cir. 2012) (en banc). In 1952, Congress passed the INA, directing the Attorney General to "establish such regulations . . . [as] necessary" to administer and enforce the act. Pub. L. No. 82-414, § 103(a), 66 Stat. 163, 173 (1952). Under this directive, the Attorney General updated the Board's regulations, *see* 8 C.F.R. § 6.2 (1952) ("Reconsideration or reopening of any case in which a decision has been made by the Board, whether requested by the [government], or by the party affected by the decision, shall be only

11

upon written motion to the Board."), and established a post-departure bar,[8] *id.* ("A motion to reopen or a motion to reconsider shall not be made by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States."). In 1954, the Board interpreted the post-departure bar as depriving it of jurisdiction to consider motions to reopen filed by aliens located outside the United States. *See In re G–y B–*, 6 I. & N. Dec. 159, 160 (B.I.A. 1954). And in 1958, the Attorney General formalized the Board's sua sponte authority: "The Board *may on its own motion* reopen or reconsider any case in which it has rendered a decision." 8 C.F.R. § 3.2 (1964 Cum. Supp.) (emphasis added); Miscellaneous Amendments to Chapter, 23 Fed. Reg. 9115, 9118 (Nov. 26, 1958).

For thirty-eight years, the statutory and regulatory regime remained largely intact. *See* 8 C.F.R. § 3.2 (1995) (containing the same language as the 1958 regulation). But in 1990, Congress directed that "the Attorney General . . . issue regulations with respect to . . . the period of time in which motions to reopen . . . may be offered in deportation proceedings" and ordered that the "regulations include a limitation on the number of such motions that may be filed and a maximum time period for the filing of such motions." *See* Immigration Act of 1990, Pub. L. No. 101-649, § 545(d)(1), 104 Stat. 4978, 5066. "Congress issued this directive in order to 'reduce or eliminate . . . abuses' of regulations that, at that time, permitted aliens to

---

[8] In 1961, Congress enacted a judicial post-departure bar, preventing courts from reviewing a deportation order "if the alien . . . has departed from the United States after the issuance of the order." 8 U.S.C. § 1105a(c) (1964); *see also Zhang v. Holder*, 617 F.3d 650, 656 (2d Cir. 2010) (discussing the judicial post-departure bar).

file an unlimited number of motions to reopen without any limitations period." *Zhang v. Holder*, 617 F.3d 650, 657 (2d Cir. 2010) (omission in original) (quoting *Stone v. INS*, 514 U.S. 386, 400 (1995)).

In response, the Attorney General revised these regulations in three important ways: (1) by limiting a party to "file *only one motion to reopen* proceedings (whether before the Board or the [IJ]) and that motion must be filed *not later than 90 days* after the date on which the final administrative decision was rendered in the proceeding sought to be reopened," 8 C.F.R. § 3.2(c)(2) (1997) (emphasis added); (2) by expanding the Board's sua sponte authority to "*at any time* reopen or reconsider on its own motion any case in which it has rendered a decision," *id.* § 3.2(a) (1997) (emphasis added) (adding the "at any time" language); and (3) by enabling an IJ "upon his or her own motion *at any time* . . . [to] reopen or reconsider any case in which he or she has made a decision," 8 C.F.R. § 3.23(b)(1) (1998) (emphasis added).[9] The regulation's IJ provision also limited an alien to one motion to reopen and included a time bar (ninety days) and a post-departure bar. *See id.*

Congress codified some of these regulatory changes. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat.

---

[9] We cite the 1998 version because the 1997 version appears to have inadvertently omitted the "at any time" language. *See* 8 C.F.R. § 3.23(b)(1) (1997) ("The Immigration Judge may upon his or her own motion . . . reopen or reconsider any case . . . .").

3009-546 ("IIRIRA" or "1996 Act").[10] First, Congress provided aliens a right to file one motion to reopen—if done within ninety days of the final removal order. 8 U.S.C. § 1229a(c)(6)(A) (2000); *id.* § 1229a(c)(6)(C)(i); *see also Dada v. Mukasey*, 554 U.S. 1, 14 (2008) ("[The IIRIRA] transform[ed] the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien."). Second, Congress required deportation of aliens within ninety days of final removal orders. 8 U.S.C. § 1231(a)(1)(A) (2000). And third, Congress repealed the statutory judicial-post-departure bar and declined to "codify the regulatory post-departure bar." *Contreras-Bocanegra*, 678 F.3d at 814–15.

In early 1997, responding to Congress's direction in the 1996 Act, the Attorney General promulgated new regulations. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312 (Mar. 6, 1997). Though Congress chose not to codify either sua sponte review or a post-departure bar, the new regulations included both. *See id.* at 10,330–31 (codified at 8 C.F.R. § 3.2(a), (d) (1997)). These regulations remain in place.[11]

B.     **The IJ Regulation: 1997–Present**

---

[10] We cite the 1997 version of the Code of Federal Regulations (CFR), which includes amendments made in 1996, before Congress enacted the 1996 Act. *See About the Code of Federal Regulations*, Nat'l Archives, https://www.archives.gov/federal-register/cfr/about.html (last updated Aug. 8, 2018).

[11] The regulations' location in the CFR was moved after DHS was created in 2002. *Zhang*, 617 F.3d at 658 n.6 (discussing Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824 (Feb. 28, 2003)).

The outcome of this appeal turns on the text of one of the regulations first adopted in 1997:

> (b) Before the Immigration Court—
>
> (1) In general. An Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the Board of Immigration Appeals. . . . [A] party may file only . . . one motion to reopen proceedings . . . within 90 days of the date of entry of a final administrative order of removal, deportation, or exclusion . . . . A motion to reopen . . . shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States.

8 C.F.R. § 1003.23(b)(1) (2019).[12]

In this appeal, the government argues that this regulation is genuinely ambiguous and that we must defer if the agency's interpretation is reasonable. Brief for Respondent at 14 (mistakenly asking for *Chevron* deference, not *Auer* deference). It pins the regulation's asserted ambiguity on what the agency perceives is a conflict between the specific post-departure-bar provision and the provision giving IJs general sua sponte authority to reopen removal proceedings "at any time."[13] *Id.* at 15. But as explained below, we rule that these two provisions do not conflict but instead

---

[12] The corresponding provisions governing the Board, 8 C.F.R. § 1003.2(a), (d), are not at issue in this appeal. Section 1003.2(a) grants the Board sua sponte authority in "any case in which it has rendered a decision," something the Board had not done in Reyes-Vargas's case.

[13] In *In re Armendarez-Mendez*, 24 I. & N. Dec. 646, 660 (B.I.A. 2008), a published, precedential Board decision, the Board held that the post-departure bar limits the IJ and Board's authority to sua sponte reopen.

apply within their own realms. And without a conflict, we find no ambiguity and cannot defer to the Board's interpretation.

### C. Interpreting the Regulation

The regulation (and the statute later codifying key pieces of it as applied to "motions to reopen") gives aliens, such as Reyes-Vargas, two avenues to reopening. First, an alien, or the Immigration Service, may file a "motion to reopen." *See* 8 U.S.C. § 1229a(c)(7) (2018) (providing aliens the statutory right to file "one motion to reopen"); 8 C.F.R. § 1003.23(b)(1).[14] But the regulation limits the alien's right to file this kind of motion in two ways important to this appeal:[15] (1) a time bar ("A motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal, deportation, or exclusion . . . .") and (2) a post-departure bar ("A motion to reopen . . . shall not be made by or on behalf of a person . . . subsequent to his or her departure from the United States."). 8 C.F.R. § 1003.23(b)(1). Thus, for an alien's motion to reopen to be legally operative under the regulation, it must be filed within ninety days of a removal order and while the alien is still in the United States—an alien must avoid both bars.[16]

---

[14] As discussed *supra* Section III.A, the statute incorporated the regulation's requirements.

[15] 8 C.F.R. § 1003.23(b)(1) ("Subject to the exceptions in this paragraph . . . a party may file only . . . one motion to reopen proceedings.").

[16] Consider the following two situations: First, if a party files a motion to reopen outside of ninety days, the regulation bars any consideration of the motion, even if the alien remains in the United States. Or second, if a party files a motion to

But this appeal does not concern this first avenue. After all, Reyes-Vargas's petition to the IJ admitted that he was too late (more than ninety days past his removal order) to file a "motion to reopen." R. at 99. Instead, both parties agree that this appeal concerns the second avenue,[17] which allows a case to be reopened "upon [the IJ's] own motion at any time."[18] 8 C.F.R. § 1003.23(b)(1). With this second avenue, the regulation provides a much broader, though less certain, avenue than the "motion to reopen." For two reasons, we conclude this regulation unambiguously grants the IJ jurisdiction to reopen "at any time" under this avenue, even when the alien has departed the United States. Thus, we do not defer to the Board's interpretation.

---

reopen within ninety days, but after the alien has left the country, the regulation bars any consideration there too. This court struck down the post-departure bar in this second situation. *Contreras-Bocanegra*, 678 F.3d at 813 (invalidating the post-departure bar as an improper limit on the statutory right to file one motion to reopen).

[17] In its decision, the Board noted that Reyes-Vargas's case turned on the IJ's sua sponte authority. R. at 3 ("[Reyes-Vargas] admits that his motion to reopen is untimely, as it was filed more than 90 days after the entry of a final administrative order of removal. He does not allege that any . . . exception exists. He therefore relies on the Immigration Judge's authority to reopen removal proceedings sua sponte." (citations omitted)).

[18] Nothing in the regulation prevents an alien from furnishing the IJ with bases on which the IJ might choose to sua sponte reopen removal proceedings. In fact, we note that in *Mata* the Supreme Court recognized the difference between an alien's motion to reopen and an alien's invitation (request) that the IJ exercise its sua sponte authority. *See* 135 S. Ct. at 2155 ("That decision . . . hinged on 'constru[ing]' Mata's motion as something it was not: 'an invitation for the [Board] to exercise' its *sua sponte* authority." (first alteration in original) (citation omitted)).

First, § 1003.23(b)(1) limits the post-departure bar to a party's "motion to reopen," which, as noted, differs from the IJ's sua sponte motion to reopen removal proceedings.[19] Addressing the IJ's sua sponte power, § 1003.23(b)(1) reads as follows: "An Immigration Judge may upon his or her own motion at any time . . . reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the Board of Immigration Appeals." The rest of § 1003.23(b)(1) concerns something else—"motions to reopen" filed by "the Service or the alien." Included in this remainder language are the time and post-departure bars. Importantly, they apply only to a "motion to reopen." *Id.* ("A *motion to reopen* . . . shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States." (emphasis added)); *id.* ("[A] party may file only . . . one *motion to reopen* proceedings . . . within 90 days of the date of entry of a final administrative order of removal, deportation, or exclusion . . . ." (emphasis added)). Thus, the IJ may move sua sponte to reopen removal proceedings even when either or both the ninety-day time bar or the post-departure bar would defeat an alien's "motion to reopen."

---

[19] When an IJ on her own sua sponte "motion" reopens removal proceedings, the IJ acts solely on her own behalf. In contrast, a party's "motion to reopen" is filed "by or on behalf of a person." *See* 8 C.F.R. § 1003.23(b)(1). Treating the IJ's sua sponte motion as one made on behalf of someone apart from the IJ would cast the IJ as an advocate, not a neutral decisionmaker.

18

Second, the regulation's plain language leads to a sensible result. Oftentimes, the alien's good reason for reopening removal proceedings takes time to manifest itself. Reyes-Vargas's situation offers a good example. Vacating a state felony conviction for constitutional error, *Padilla* error or otherwise, likely takes more time than an alien has in which to stave off removal. Had the agency written its regulations to attach a post-departure bar to the IJ's and Board's sua sponte authority to reopen removal proceedings, the resulting sua sponte authority would be next to worthless. By its language, § 1003.23(b)(1) sensibly gives the IJ unlimited time to consider an alien's exceptional circumstances—whether by learning of them by its own efforts or, more likely, from the alien's needed prompt, as here. Without this, the IJ's sua sponte power would be unavailable when most needed.

Thus, we conclude that the IJ's sua sponte power to reopen removal proceedings is independent of, so not subject to, the post-departure bar because § 1003.23(b)(1)'s plain language limits only "motions to reopen" to the ninety-day and post-departure bars, while for sua sponte, the IJ may reopen "at any time." *Id.* In no way is this regulation "genuinely ambiguous." So as *Kisor* instructs, in this circumstance, we "ha[ve] no business deferring to" the agency's interpretation. *See* 139 S. Ct. at 2415.

For the reasons given above, § 1003.23(b)(1)'s post-departure bar does not apply to the IJ's sua sponte motion to reopen removal proceedings. Thus, we hold that the Board erred by concluding that the IJ lacked jurisdiction to consider Reyes-Vargas's invitation for sua sponte relief. And for that reason, we grant Reyes-

19

Vargas's petition for review, reverse the Board's decision, and remand for it to consider whether the IJ properly rejected Reyes-Vargas's sua sponte request on the merits.

### D.    *Rosillo-Puga*

Despite this, we still must address whether our decision in *Rosillo-Puga v. Holder*, 580 F.3d 1147 (10th Cir. 2009), *overruled on other grounds by Contreras-Bocanegra*, 678 F.3d at 819, binds us to affirm. Though neither party argues that *Rosillo-Puga* binds us, Reyes-Vargas's issue runs right through that case. Accordingly, we address *Rosillo-Puga* in some detail.

In *Rosillo-Puga*, the government began removal proceedings against Rosillo-Puga by filing a notice to appear in the immigration court after he was convicted for domestic battery in Indiana. *Id.* at 1149. Under Seventh Circuit law, this domestic-battery conviction qualified as an aggravated felony and a crime of domestic violence, rendering him removable.[20] *Id.* After a hearing, the IJ ordered him removed from the United States. *Id.* He chose not to appeal. *Id.* Several months after his removal, the Seventh Circuit ruled, in a different case, that an Indiana domestic-battery conviction did not qualify as a crime of domestic violence or an aggravated felony. *Id.* So about three years after this decision, he moved to have the IJ reopen his

---

[20] 8 U.S.C. § 1227(a)(2)(A)(iii) (making aliens removable for being "convicted of a crime for which a sentence of one year or longer may be imposed"); 8 U.S.C. § 1227(a)(2)(E) (making aliens removable for committing a "crime of domestic violence," which is a "crime of violence" against a spouse); 18 U.S.C. § 16 (defining a "crime of violence" under federal law).

immigration proceedings, relying both on the statutory "motion to reopen" (as mirrored in the regulations) and on the IJ's sua sponte authority to reopen at any time. *Id.* The IJ rejected both of Rosillo-Puga's requested avenues, ruling that the post-departure bar prevented its exercise of discretion in the case, and the Board affirmed. *Id.* at 1150–51. Rosillo-Puga appealed the Board's decision to our court, and we also affirmed. *Id.* at 1160.

On appeal, all agreed that Rosillo-Puga's statutory "motion to reopen" was untimely—he had filed it more than ninety days after his order of removal. That provided a full basis to deny the statutory "motion to reopen." *Id.* at 1158. But despite reluctance from a concurring judge, the majority opinion went further—it ruled that the regulation's post-departure bar limited the statutory right to file a motion to reopen, meaning Rosillo-Puga's "motion to reopen" also failed under the regulation's post-departure bar. *Id.* at 1158–60. In a spirited dissent, Judge Lucero protested that the regulation's post-departure bar could not defeat the statutory right when the statute contained no post-departure bar. *Id.* at 1161–62 (Lucero, J., dissenting).

Two years later, after six other circuits had ruled the other way (now nine), our court issued a unanimous en banc opinion overruling *Rosillo-Puga*'s holding that the regulation's post-departure bar limited the statutory "motion to reopen." *See Contreras-Bocanegra*, 678 F.3d at 813.

But did *Rosillo-Puga* also apply the regulation's post-departure bar to an IJ's motion to sua sponte reopen removal proceedings?—an issue not raised in *Contreras-*

21

*Bocanegra*. After much struggle, we conclude that it likely did.[21] But we must

reconsider *Rosillo-Puga* in light of *Kisor*.

For two reasons, this case has no force. First, *Rosillo-Puga* does not even cite

*Auer*, let alone apply its required analysis. We cannot know how the court would

have decided *Rosillo-Puga* had it done so. And further, ten years after *Rosillo-Puga*,

the Court in *Kisor* has narrowed *Auer* deference, requiring more rigorous review by

courts reviewing an agency's interpretation of its own regulation. We must apply

*Kisor*'s framework, whatever *Rosillo-Puga* or any other pre-*Kisor* case held. And

*Kisor* requires that we dig deeper than did *Rosillo-Puga*. As explained above, after

adhering to *Kisor*'s pronouncements of strict review, we conclude that the

unambiguous language of § 1003.23(b)(1)'s post-departure bar applies to only

---

[21] Rosillo-Puga argued for the IJ to exercise sua sponte authority to reopen his removal proceedings. He invoked as "exceptional circumstances" the change in Seventh Circuit law now disqualifying his domestic-battery conviction as an aggravated felony or crime of domestic violence. *Rosillo-Puga*, 580 F.3d 1149–50. He also argued that the IJ's authority to reopen "at any time" overcame the post-departure bar. *Id.* The IJ rejected this argument by relying on the general/specific canon of construction. *Id.* at 1150. The IJ treated the post-departure bar as a specific provision overcoming the more general "at any time" provision. *Id.* The Board followed suit. *Id.* at 1151. This court recited the general/specific canon and favorably cited a case applying that canon to the same issue, *Navarro-Miranda v. Ashcroft*, 330 F.3d 672 (5th Cir. 2003). *Id.* at 1159–60. After doing so, this court ruled that "we perceive no error in the [Board]'s decision that, notwithstanding its *sua sponte* authority to consider motions to reopen, it declined to reopen Rosillo-Puga's proceedings in this case." *Id.* at 1160 (citation omitted). But on the other hand, the court left doubt on this point, cryptically noting that the IJ had "declined" to reopen and, in a footnote at the end of this sentence, stating that "the [Board] has recognized that it may reopen or reconsider a case sua sponte in 'exceptional circumstances.'" *Rosillo-Puga*, 580 F.3d at 1160 n.7 (citation omitted).

22

"motions to reopen." Second, in *Rosillo-Puga*, the alien argued a point we would reject here too—that "at any time" smothered the post-departure bar. This missed the plain-language interpretation we give—it overlooked that the post-departure bar applies only to "motions to reopen," not to the IJ's sua sponte authority to reopen.[22] That left the court to follow *Navarro-Miranda*'s misguided use of the general/specific canon, which as we have explained, is inapplicable here because the provisions do not conflict.

## CONCLUSION

For the foregoing reasons, we grant Reyes-Vargas's petition for review and vacate the Board's decision because the IJ had jurisdiction to consider Reyes-

---

[22] Three circuit courts have resolved our issue otherwise. *See Desai v. Att'y Gen. of the U.S.*, 695 F.3d 267, 271 (3d Cir. 2012); *Zhang*, 617 F.3d at 658–62; *Ovalles v. Holder*, 577 F.3d 288, 296 (5th Cir. 2009) (per curiam). Though those cases considered the regulations governing the Board's sua sponte authority and post-departure bar, the Board's regulations are effectively the same as the IJ's regulation we review. *See* 8 C.F.R. § 1003.2(a) ("The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision."); *id.* § 1003.2(d) ("A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings *subsequent* to his or her departure from the United States." (emphasis added)). We disagree with those cases because they suffer the same defects as does *Rosillo-Puga*. Most importantly, they preceded *Kisor* and its narrowed-deference analysis. Further, they failed to recognize the two independent paths available to an alien seeking to reopen removal proceedings. They lumped both paths—motions to reopen filed by a party and invitations for the IJ or Board to exercise sua sponte authority to reopen—into motions to reopen. But as the Supreme Court explained in *Mata*—after these three cases were decided—this is incorrect because "the [Board]'s regulations provide that, separate and apart from acting on the alien's motion [to reopen within 90 days of removal], the [Board] may reopen removal proceedings 'on its own motion'—or, in Latin, *sua sponte*—at any time." 135 S. Ct. at 2153 (citing 8 C.F.R. § 1003.2(a)).

Vargas's request for sua sponte relief. Thus, we remand for the Board to review the IJ's decision that sua sponte reopening Reyes-Vargas's removal proceeding was not warranted notwithstanding the *Padilla* violation on which his original removal was based.