**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**April 25, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JOE RICHARD ARTUR,

     Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

     Respondent.

No. 23-9554
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **EID**, and **CARSON**, Circuit Judges.
_____

Joe Richard Artur petitions for review the Board of Immigration Appeals'

("BIA" or "Board") order denying his motion to reconsider the BIA's denial of his

motion to reopen his removal proceedings.  We dismiss the petition in part for lack of

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

jurisdiction and, exercising jurisdiction under 8 U.S.C. § 1252(a), deny the remainder of the petition.

## I. BACKGROUND

### A. *Removal Proceedings*

Mr. Artur is a native and citizen of Ghana. He was admitted to the United States in June 2004 as a nonimmigrant visitor with authorization to remain no later than September 17, 2004. The Department of Homeland Security filed a Notice to Appear ("NTA") in the immigration court on June 15, 2011, charging him with removability under 8 U.S.C. § 1227(a)(1)(B) for having remained in the United States longer than permitted. The NTA did not designate a date or time for his initial removal hearing. On June 16, 2011, the immigration court mailed Mr. Artur a Notice of Hearing ("NOH"), which set the date and time for the hearing. Following a merits hearing, an immigration judge ("IJ") found Mr. Artur removable and denied his applications for asylum, withholding, and relief under the Convention Against Torture. On July 17, 2013, the BIA dismissed Mr. Artur's appeal from the IJ's removal order. Mr. Artur filed a petition for review, which we dismissed in part and denied in part. *See Artur v. Holder*, 572 F. App'x 592, 593 (10th Cir. 2014).

B. *Motion to Reopen*

On January 9, 2019, Mr. Artur filed a motion to reopen "sua sponte"[1] and remand to allow him to file an application for cancellation of removal for certain nonpermanent residents.  To be eligible for that relief, a nonpermanent resident must demonstrate, among other things, that he "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [the cancellation] application."  8 U.S.C. § 1229b(b)(1)(A).

In his motion to reopen, Mr. Artur argued that *Pereira v. Sessions*, 585 U.S. 198 (2018), constituted a fundamental change in the law warranting sua sponte reopening.  In *Pereira*, the Supreme Court held that an NTA "that fails to designate the specific time or place" of a removal hearing is insufficient to trigger the statutory "stop-time rule" that cuts off a noncitizen's continuous physical presence in the United States.  585 U.S. at 208–09.[2]  Mr. Artur argued that because his NTA did not include the "time and place"[3] of his removal hearing, *Pereira* dictated that it did not

---

[1] "We put scare quotes around '*sua sponte*' because a reopening is not sua sponte where the alien requests it.  The BIA nonetheless entertains motions for 'sua sponte' reopening.  *See, e.g.*, *In re J-J-*, 21 I. & N. Dec. 976, 984–85 (B.I.A. 1997)."  *Djie v. Garland*, 39 F.4th 280, 282 n.1 (5th Cir. 2022).

[2] "Under the statutory 'stop-time rule,' the period of continuous physical presence ends (A) when the alien is served with a notice to appear, or (B) when the alien has committed certain criminal offenses.  8 U.S.C. § 1229b(d)(1)."  *Estrada-Cardona v. Garland*, 44 F.4th 1275, 1278–79 (10th Cir. 2022).

[3] Mr. Artur's NTA did state the place but omitted the date and time.  *See* ROA, Vol. 2 at 950.  The statute requires the NTA to designate "[t]he time and place at which the proceedings will be held," § 1229(a)(1)(G)(i), but does not refer to the date.

trigger the stop-time rule, and he therefore met the 10-year physical presence requirement. ROA, Vol. 1 at 164–65. He also argued that he met the other three requirements for cancellation eligibility (that "he has been a person of good moral character during such period," has no convictions of certain enumerated offenses, and his "removal would result in exceptional and extremely unusual hardship" to a qualifying family member, § 1229b(b)(1)(B)–(D)).

On May 10, 2019, the BIA denied the motion to reopen as untimely because it was filed more than 90 days after the final removal order. *See* 8 U.S.C. § 1229a(c)(7). The BIA also declined to reopen sua sponte, rejecting Mr. Artur's reliance on *Pereira*. The BIA instead relied on a post-*Pereira* case, *In re Mendoza-Hernandez*, 27 I. & N. Dec. 520, 529 (B.I.A. 2019), which held that if an NOH contains the required information regarding the time and place of the initial removal hearing, it perfects a deficient NTA and triggers the stop-time rule. The BIA found that the NOH in Mr. Artur's case cured the defective NTA and cut off his continuous physical presence in 2011, short of the required 10 years. The BIA noted Mr. Artur had submitted evidence that might otherwise tend to support cancellation, but it declined to reopen sua sponte based on the failure to demonstrate prima facie eligibility given his insufficient continuous physical presence.

### C. *Petition for Review; Motion to Reconsider and Remand*

On June 5, 2019, Mr. Artur filed a petition for review of the order denying his motion to reopen. The next day, he filed with the BIA a "*Sua Sponte* Motion to Reconsider and Remand Based on Intervening Case Law," seeking reconsideration of

the denial of his motion to reopen based on a Ninth Circuit case rejecting *Mendoza-Hernandez*. ROA, Vol. 1 at 7–13. While his motion to reconsider was pending, we granted Mr. Artur's petition for review. *See Artur v. Barr*, 819 F. App'x 618, 621 (10th Cir. 2020) ("*Artur II*"). We based our decision on an intervening Tenth Circuit case, *Banuelos v. Barr*, 953 F.3d 1176 (10th Cir. 2020), which concluded that "the stop-time rule is triggered by one complete notice to appear rather than a combination of documents," *id.* at 1178, and rejected the reasoning of *Mendoza-Hernandez*, *see id.* at 1179-80. We remanded for the BIA to consider the motion to reopen in light of our decision in *Banuelos*.

### D. **Niz-Chavez** *Decided*

In 2021, while Mr. Artur's motion for reconsideration and our remand were still pending before the BIA, the Supreme Court issued *Niz-Chavez v. Garland*, 593 U.S. 155 (2021). There, the Court held (consistent with *Banuelos*) that only one complete NTA triggers the stop-time rule. *See id.* at 163 ("[T]he government must issue a single statutorily compliant document to trigger the stop-time rule.").

### E. *Proceedings on Remand*

On remand, the BIA denied Mr. Artur's motion to reconsider its denial of his motion to reopen. The BIA acknowledged that in light of *Niz-Chavez* and *Banuelos*, Mr. Artur appeared to have the required 10-year period of continuous physical presence, but the "threshold issue" was whether the motion to reopen was untimely. ROA, Vol. 1 at 4. The BIA determined the 2019 motion to reopen was untimely because it was filed more than 90 days after the BIA's dismissal of Mr. Artur's

administrative appeal in 2013.  The BIA noted that Mr. Artur had "made no argument that an exception to the general 90-day deadline applied or that equitable tolling could remedy the untimeliness of his motion." *Id.*

The BIA next concluded that Mr. Artur's lack of diligence counseled against sua sponte reopening.  It reasoned that even though *Niz-Chavez* "had yet to be decided," Mr. Artur "could and should have raised a statutory argument concerning the deficiency of the NTA on or before the . . . final hearing" before the IJ in 2012, "or, at the latest, before the BIA when this matter was last before [the BIA] on appeal." *Id.*  The BIA observed that the argument was available based on the plain language of the immigration laws (termination of continuous period under § 1229b(d)(1) and § 1229(a)'s listing of requirements for NTA).  But "instead of arguing eligibility for cancellation of removal, [Mr. Artur] opted not to seek such relief," and he had "not shown a reasonable excuse for his extensive delay in contesting the NTA or his decision to wait until *Niz-Chavez* was issued before seeking cancellation of removal." *Id.* at 5.

In support, the BIA relied on *Mejia-Padilla v. Garland*, 2 F.4th 1026, 1030–34 (7th Cir. 2021), where the Seventh Circuit held that a noncitizen could not seek equitable tolling for an untimely motion to reopen based on defects in the NTA made clear in *Pereira*.  The BIA added that "sua sponte authority is not a general remedy for any hardships created by the time and number limitations in the motions regulations; rather, it should be invoked sparingly, as an extraordinary remedy reserved for exceptional situations."  ROA, Vol. 1 at 5 (quotations omitted).

## II.  DISCUSSION

### A.  *Standard Of Review*

We review BIA decisions on motions to reopen and motions to reconsider for an abuse of discretion.  *Qiu v. Sessions*, 870 F.3d 1200, 1202 (10th Cir. 2017) (motions to reopen); *Rodas-Orellana v. Holder*, 780 F.3d 982, 990 (10th Cir. 2015) (motions to reconsider).  "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements."  *Qiu*, 870 F.3d at 1202 (quotations omitted).  "[C]ommitting a legal error . . . is necessarily an abuse of discretion."  *Id.* (quotations omitted).

### B.  *Equitable Tolling*

Mr. Artur argues that equitable tolling should apply to his motion to reopen based on *Pereira* and *Niz-Chavez*.  He contends that, contrary to the BIA's determination, he raised equitable tolling in his motion to reopen by relying on extraordinary circumstances—namely, the holding in *Pereira* (*Banuelos* and *Niz-Chavez* both post-dated the motion to reopen)—and that he diligently filed the motion to reopen because he did so within six months of *Pereira*.

We have jurisdiction to review "a BIA decision denying a motion to reopen as untimely and rejecting a request for equitable tolling."  *Berdiev v. Garland*, 13 F.4th 1125, 1130 (10th Cir. 2021).  But the Government argues, and we agree, that Mr. Artur failed to exhaust an equitable-tolling argument before the BIA.  "Issue exhaustion is . . . part of the fundamental principle of administrative law that an

7

agency must have the opportunity to rule on a challenger's arguments before the challenger may bring those arguments to court." *Miguel-Pena v. Garland*, 94 F.4th 1145, 1154–55 (10th Cir. 2024) (quotations omitted). In his motion to reopen, Mr. Artur asked only for sua sponte reopening in light of *Pereira*, not for reopening based on equitable tolling. Nor did he assert equitable tolling in his motion for reconsideration or in a brief he filed after our remand in *Artur II*. Indeed, the BIA expressly made a point of stating that Mr. Artur had not argued that equitable tolling should apply.

Mr. Artur points us to no authority requiring the BIA to construe Mr. Artur's argument as seeking equitable tolling based on a change in the law, nor are we aware of any. We therefore see no abuse of discretion in the BIA's determination that Mr. Artur did not raise an equitable-tolling argument. We thus decline to consider the merits of Mr. Artur's equitable-tolling argument. *See Miguel-Pena*, 94 F.4th at 1155 (explaining that "issue exhaustion is a claim-processing rule that is mandatory but subject to forfeiture and waiver," and that "where a party timely and properly objects, . . . [w]e enforce the exhaustion requirement by declining to consider the unexhausted issue" (ellipsis and quotations omitted)).

### C. *Sua Sponte Reopening*

Mr. Artur argues that the BIA erred in declining to reopen sua sponte because *Pereira* and its progeny, in particular *Niz-Chavez* and *Banuelos*, constitute a fundamental change in the law amounting to the type of exceptional situation that would allow the BIA to grant reopening sua sponte. He points out that at his final

hearing, he lacked 10 years of continuous physical presence.  He therefore claims he was diligent in pursuing cancellation because he filed his motion to reopen within six months of *Pereira*.  As we explain, our jurisdiction to review the BIA's denial of sua sponte reopening in this case is limited to whether the BIA's understanding of the holdings of *Pereira*, *Niz-Chavez*, and *Banuelos* was legally correct.  We lack jurisdiction to review the BIA's diligence rationale for declining to reopen sua sponte.[4]

1.  **Legal Background of Sua Sponte Reopening**

"In the exercise of its discretion, the BIA may overlook the untimeliness of a motion to reopen by reopening the proceedings sua sponte."  *Estrada-Cardona*, 44 F.4th at 1286.  The BIA's authority stems from a regulation—the BIA "may at any time reopen or reconsider on its own motion any case in which it has rendered a decision."  8 C.F.R. § 1003.2(a) (eff. to Jan. 24, 2021).[5]  And "[t]he decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board."  *Id.*

---

[4] Mr. Artur also argues that the BIA erred in relying on the Seventh Circuit's opinion in *Mejia-Padilla* "to determine that [he] is not prima facie eligible for cancellation of removal."  Pet'r's Br. at 13.  This argument is misplaced because the BIA did not find that he was not prima facie eligible for cancellation.

[5] We apply the version of § 1003.2 that was in effect when Mr. Artur filed his motions to reopen and reconsider in 2019 because the current version of the regulation, which substantially limits the BIA's authority to sua sponte reopen or reconsider, is subject to nationwide injunctions issued by two federal district courts in 2021.  *See Castillo-Reyes v. Att'y Gen.*, No. 23-1238, 2024 WL 658973, at *2 n.2 (3d Cir. Feb. 16, 2024) (unpublished) (discussing effect of injunction on applicable version of regulation); *Kumar v. Garland*, No. 22-9533, 2023 WL 6318897, at *2 n.3 (10th Cir. Sept. 28, 2023) (unpublished) (same).

The regulation thus "allows the Board to reopen proceedings sua sponte in exceptional situations." *In re J-J-*, 21 I. & N. Dec. 976, 984 (B.I.A. 1997). The BIA has held that "[i]n order for a change in the law to qualify as an exceptional situation that merits the exercise of discretion by the [BIA] to reopen or reconsider a case sua sponte, the change must be fundamental in nature and not merely an incremental development in the state of the law." *In re G-D-*, 22 I. & N. Dec. 1132, 1132 (B.I.A. 1999).

2. **Jurisdictional Analysis**

We generally lack jurisdiction to review the BIA's decision not to exercise its authority to sua sponte reopen removal proceedings "because there are no standards by which to judge the agency's exercise of discretion." *Reyes-Vargas v. Barr*, 958 F.3d 1295, 1300 (10th Cir. 2020) (quotations omitted). But under a narrow exception, we may review whether the BIA relied "'on an incorrect legal premise'" or "'misperceived the legal background.'" *Reyes-Vargas*, 958 F.3d at 1300 (first quoting *Pllumi v. Att'y Gen. of the U.S.*, 642 F.3d 155, 160 (3d Cir. 2011), then quoting *Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009)); *see also Estrada-Cardona*, 44 F.4th at 1286 (same); *Berdiev*, 13 F.4th at 1130 (same as to "incorrect legal premise").

In cases where the petitioner asked for sua sponte reopening based on a purported fundamental change in the law, we have limited our jurisdiction to consider only whether the BIA relied "'on an incorrect legal understanding of'" the relevant case or cases. *Olivas-Melendez v. Wilkinson*, 845 F. App'x 721, 731 (10th Cir. 2021)

10

(quoting *Mendiola v. Holder*, 576 F. App'x 828, 843 (10th Cir. 2014)).[6]  After making that determination, "'our review of the BIA's decision to decline sua sponte reopening [is] complete.'"  *Id.* (quoting *Mendiola*, 576 F. App'x at 843).  Thus, we lack jurisdiction to "review whether the BIA properly applied its own standards for determining whether a change in the law is fundamental or incremental."  *Id.* at 732.

Mr. Artur's arguments fall outside this narrow jurisdictional exception.  He does not contest the legal correctness of the BIA's understanding of the relevant cases.  Nor could he.  The BIA correctly acknowledged that, in light of *Niz-Chavez* and *Banuelos*, Mr. Artur's NTA did not trigger the stop-time rule and he therefore appeared to have the 10-year period of continuous physical presence required for cancellation eligibility.  Based on that correct view of the holdings of *Niz-Chavez* and *Banuelos* and their effect on his eligibility for cancellation of removal, the BIA determined Mr. Artur had not been diligent in contesting the legal sufficiency of his NTA and pursuing cancellation.  The BIA's diligence determination is part of its discretionary decision to deny sua sponte reopening, not part of whether the BIA's legal understanding of *Niz-Chavez* and *Banuelos* was correct.  We therefore lack jurisdiction to review the diligence rationale.

---

[6] We cite unpublished cases in our disposition only for their persuasive value.  *See* Fed. R. App. 32.1(a); 10th Cir. R. 32.1(A).

11

Whether or not the BIA considered if *Pereira*, *Niz-Chavez*, and *Banuelos* effected a fundamental change in the law,[7] we lack jurisdiction to review such a determination. *See Olivas-Melendez*, 845 F. App'x at 732. And in any event, the BIA retains discretion to deny reopening sua sponte even where it concludes that a change in the law is fundamental or that, as a result of such a change in the law, a noncitizen is prima facie eligible for relief. *See Lona v. Barr*, 958 F.3d 1225, 1234–35 (9th Cir. 2020) ("The Board is not *required* to reopen proceedings sua sponte in exceptional situations, even those involving a fundamental change in the law." (brackets, ellipsis, citation, and quotations omitted)); *Dominguez v. Sessions*, 708 F. App'x 808, 811 n.4 (5th Cir. 2017) ("While a fundamental legal change may merit the granting of a regulatory motion to reopen, the BIA still has discretion to deny the motion even if the petitioner has made out . . . a [prima facie] claim for relief. *See* 8 C.F.R. § 1003.2(a) ('The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.').").

---

[7] The BIA did not expressly make a fundamental-change determination. But its recognition that *Niz-Chavez* and *Banuelos* removed an impediment to Mr. Artur's prima facie eligibility for cancellation (the lack of 10 years of continuous presence in the United States) suggests that it may have done so implicitly. *See In re G-D-*, 22 I. & N. Dec. at 1135 (considering a change in the law to be fundamental if it "was so profound that the [noncitizen] clearly acquired eligibility for relief by virtue of [the] particular change"). We express no opinion on whether the BIA implicitly made such a determination or whether those cases effected a fundamental change in the law.

III. **CONCLUSION**

We dismiss Mr. Artur's petition for review in part for lack of jurisdiction and

deny the remainder of the petition.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge