

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-5-2006

# Luntungan v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-2397

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Luntungan v. Atty Gen USA" (2006). *2006 Decisions.* Paper 804.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/804

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2397

———

JULIAN BASTIAN LUNTUNGAN,
*Petitioner*

v.

ATTORNEY GENERAL OF THE
UNITED STATES;
SECRETARY OF DEPARTMENT OF
HOMELAND SECURITY;
MICHAEL ANDERSON,
as Acting Director of the Newark, New Jersey
Field Office of the Bureau of Immigration
and Customs Enforcement; UNITED
STATES DEPARTMENT OF JUSTICE and
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY

———

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(Board No. A96-266-204)

———

Argued April 3, 2006

Before: RENDELL, SMITH, and BECKER\*, *Circuit Judges*.

(Filed June 5, 2006 )

———————

LAWRENCE SPIVAK     **(ARGUED)**
150 Broadway, Sutie 1400
New York, NY 10038
   *Attorney for Petitioner*

LINDA S. WERNERY
JANICE K. REDFERN     **(ARGUED)**
WILLIAM C. PEACHEY
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
   *Attorneys for Respondents*

———————

   \*This case was argued before the panel of Judges Rendell, Smith and Becker. Judge Becker died on May 19, 2006, before the filing of the Opinion. The decision is filed by a quorum of the panel. 28 U.S.C. § 46(d).

2

## OPINION OF THE COURT

PER CURIAM.

Julian Bastian Luntungan, a native and citizen of Indonesia and the petitioner in this case, failed to attend two consecutive removal hearings, and an Immigration Judge ("IJ") ordered him removed in absentia. Luntungan then filed three consecutive motions to reopen, which the IJ denied, and Luntungan appealed the denial of the third motion to the Board of Immigration Appeals ("BIA"). Reviewing the denial of the third motion, the BIA agreed with the IJ that Luntungan was permitted to file only one motion to reopen. This conclusion, of course, required the denial of his third motion.

Addressing Luntungan's petition for review, we first conclude that under the plain language of both the Immigration and Nationality Act and a BIA regulation, an alien ordered removed in absentia may file only one motion to reopen. *See* 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.23(b)(4)(ii). We then consider Luntungan's contention that we should read an exception into the one motion rule because his attorney was ineffective in preparing the first motion to reopen. Other courts have referred to exceptions to the one motion rule as a form of

3

equitable tolling.[1] We leave open the possibility that some equitable principle would, in the proper circumstances, permit an alien to file more than one motion to reopen, but whatever its bounds, equitable tolling will not aid Luntungan. Even assuming that the alleged ineffectiveness of Luntungan's first attorney deprived him of a fair chance to be heard on his first motion to reopen, the IJ denied Luntungan's second motion for reasons unrelated to the one motion rule, and Luntungan does not claim that the attorney who filed the second motion rendered ineffective assistance of counsel. Thus, even assuming that Luntungan's first motion to reopen did not provide a fair chance to be heard, any procedural unfairness was remedied when the IJ considered the second motion. We therefore deny Luntungan's petition for review.

## I. Facts

Luntungan was admitted to the United States in June 1995, with permission to remain until December 15, 1995. In April of 2003, Luntungan applied for asylum. He asserted that his house had been burned down, and that he feared persecution in Indonesia because he is a practicing Christian and ethnically Chinese. The former Immigration and Naturalization Service

---

[1]*See, e.g., Iturribarria v. I.N.S.*, 321 F.3d 889, 897 (9th Cir. 2003). We note, however, that the term may not be entirely accurate, for tolling, by definition, applies to time limits, not numerical limits. *See Black's Law Dictionary* 1525 (8th ed. 2004) (defining "toll" as "(Of a time period, esp. a statutory one) to stop the running of; to abate <toll the limitations period>").

then served Luntungan with a Notice to Appear, charging him with removability on the ground that he remained in the United States longer than his visa permitted. The Notice to Appear stated that Luntungan's removal hearing would occur in New York, New York on May 6, 2003, but the New York Immigration Court later granted Luntungan's motion for a change of venue to New Jersey.

Luntungan's attorney then received a Notice of Hearing from the Immigration Court in Newark, New Jersey. The Notice of Hearing stated that if Luntungan failed to appear on December 9, 2003, an order of removal could be entered against him. On September 2, 2003, the Newark Immigration Court sent Luntungan's attorney a second Notice of Hearing, which moved the date of the hearing forward to September 19, 2003. On September 22, 2003, the Newark Immigration Court sent another Notice of Hearing to Luntungan's attorney, changing the hearing date to October 28, 2003.

Luntungan failed to appear for the October 28, 2003 hearing, and the IJ rescheduled the hearing for November 4, 2003. Luntungan again failed to appear on November 4. Therefore, the IJ ordered Luntungan removed under § 240(b)(5)(A), 8 U.S.C. § 1229a(b)(5)(A), which authorizes in absentia removal orders.[2]

_____

[2]The statute provides:

Consequences of failure to appear

Luntungan responded by filing a series of motions to reopen. We emphasize that Luntungan asks us to review only the denial of his third motion.[3]

*First Motion To Reopen.* Luntungan first moved to reopen proceedings on January 20, 2004. In an affidavit attached to the motion, Luntungan implied that his attorney had written him a letter informing him of the rescheduled hearing. However, he stated that he did not receive any such letter. Luntungan did not allege at this stage that his attorney was ineffective in failing to notify him of the rescheduled hearing; indeed, the same attorney continued to represent him. The IJ denied the motion, stating that Luntungan's attorney was properly notified of the rescheduled hearing and that Luntungan did not allege that his attorney provided ineffective assistance.

---

(A) In general

Any alien who, after written notice . . . has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable. . . .

8 U.S.C. § 1229a(b)(5)(A).

[3]In his reply brief, Luntungan states that he is "not seeking this Court's review of the two initial motions to reopen."

6

*Second Motion To Reopen.* On March 5, 2004, Luntungan, represented by new counsel, filed a second motion to reopen. Luntungan now asserted that he missed his hearing dates due to the ineffective assistance of his former attorney. In a new affidavit, Luntungan stated that he did not learn about the date changes until he visited his former attorney's office prior to the original hearing date, but after he had missed the two rescheduled hearings.

Luntungan also asserted that his attorney was ineffective in preparing his first motion to reopen. He stated that the affidavit accompanying his first motion had not been translated to him, despite his inability to read English. He claimed that if he had understood his affidavit, he would not have acknowledged that his former attorney attempted to communicate the date changes to him.

On the same day that he filed the second motion to reopen, Luntungan lodged a disciplinary complaint against his former attorney with the appropriate ethics committee. However, the complaint was not attached to the motion to reopen.

The IJ denied Luntungan's second motion to reopen, stating that his ineffective assistance claim did not meet the requirements of *Matter of Lozada*, 19 I.&N. Dec. 637 (BIA 1988).[4] First, Luntungan failed to provide evidence that his

_____

[4]We have explained that to comply with *Lozada*, a motion to reopen based on ineffective assistance of counsel must meet

7

former attorney was informed of the ineffective assistance allegations and given an opportunity to respond. Second, Luntungan neither provided evidence that he filed a formal disciplinary complaint nor explained his failure to do so.

*Third Motion To Reopen.* On May 12, 2004, Luntungan filed a third motion to reopen. This time, he sought to comply with the *Lozada* requirements by attaching both the complaint lodged against his former attorney and an affidavit from his new attorney, which chronicled discussion between the new attorney and the former attorney about the disciplinary complaint.

---

three requirements:

> (1) the alien's motion must be supported by an "affidavit of the allegedly aggrieved [alien] attesting to the relevant facts"; (2) "former counsel must be informed of the allegations and allowed the opportunity to respond," and this response should be submitted with the motion; and (3) "if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not."

*Zheng v. Gonzales*, 422 F.3d 98, 106 (3d Cir. 2005) (citing *Lozada*, 19 I.&N. Dec. at 639).

The IJ denied the motion, concluding that under the relevant regulations, Luntungan was entitled to file only one motion to reopen.[5]  Luntungan appealed the denial of the third motion to the BIA, which issued a one paragraph opinion affirming the IJ's decision.  Luntungan now petitions for review of the denial of his third motion to reopen.

## II.  Jurisdiction and Standard of Review

We have jurisdiction to review the denial of Luntungan's third motion to reopen under 8 U.S.C. § 1252, which provides for judicial review of final orders of removal.  Ordinarily, the denial of a motion to reopen is reviewed for abuse of discretion. *Caushi v. Attorney General*, 436 F.3d 220, 225 (3d Cir. 2006).  This case, however, turns entirely on questions of law.  "We review the BIA's legal decisions *de novo*, but will afford *Chevron* deference to the BIA's reasonable interpretations of statutes which it is charged with administering."  *Kamara v. Attorney General*, 420 F.3d 202, 211 (3d Cir. 2005) (citations omitted).

## III.  Analysis

### A.

Section 240 of the Immigration and Nationality Act

---

[5]It is not clear why the IJ denied the *second* motion to reopen on the basis of *Lozada*, rather than applying the one motion rule.

(INA), which governs removal proceedings, states that an alien who is ordered removed may file only one motion to reopen:

> Motions to reopen
>
> (A) In general
>
> An alien may file one motion to reopen proceedings under this section, except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv).[6]
>
> 8 U.S.C. § 1229a(c)(7).[7]

---

[6]Subparagraph (C)(iv), which bears the heading "Special rule for battered spouses, children, and parents," does not apply here. *See* 8 U.S.C. § 1229a(c)(7)(C)(iv).

[7]Ordinarily, an alien must file a motion to reopen within 90 days of the entry of a final order of removal. 8 U.S.C. § 1229a(c)(7)(C)(I). However, a different time period applies to an alien who, like Luntungan, is ordered removed in absentia. Such an alien may file a motion to reopen within 180 days of an order of removal "if the alien demonstrates that the failure to appear was because of exceptional circumstances" or "at any time" if the alien demonstrates that he did not receive required notice of the proceedings. 8 U.S.C. §§ 1229a(b)(5)(C)(I) & (ii). While these provisions create specialized rules for the time period during which a motion to reopen may be filed by an alien ordered removed in

BIA regulations confirm that an alien ordered removed in absentia may file only one motion to reopen:

> Order entered in absentia or removal proceedings. An order of removal entered in absentia or in removal proceedings pursuant to section 240(b)(5) of the Act [8 U.S.C. § 1229a(b)(5)] may be rescinded only upon a motion to reopen . . . . *An alien may file only one motion pursuant to this paragraph.*

8 C.F.R. § 1003.23(b)(4)(ii) (emphasis added).

Separate statutes and regulations apply to an alien who is ordered deported or excluded—as opposed to removed—in absentia. As the Supreme Court has explained, "[r]emoval is a new procedure," created by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). *Jama v. Immigration and Customs Enforcement,* 543 U.S. 335, 349 (2005). As a result of IIRIRA, removal proceedings combine "two previously distinct expulsion proceedings, 'deportation' and 'exclusion.'" *Id.*[8] An alien who would have been placed in

---

absentia, they do not refer to the *number* of motions that such an alien may file. Rather, the general provision governing motions to reopen, 8 U.S.C. § 1229a(c)(7), applies, permitting only one motion to reopen.

[8]*See also* 8 U.S.C. § 1229a(a)(1) (stating that in removal proceedings, "[a]n immigration judge shall conduct proceedings for

11

deportation or exclusion proceedings prior to April 1, 1997, is now placed in removal proceedings. *Galicki v. INS*, No. 02-cv-4586, 2003 WL 21781946 (E.D.N.Y. Aug. 1, 2003), at *2.[9]

Under the statute that applies to pre-IIRIRA proceedings, 8 U.S.C. § 1252b, there is no limit on the number of motions to reopen that an alien may file. Indeed, the statute does not mention motions to reopen. *See* 8 U.S.C. § 1252b (repealed 1996). The old statute continues to apply to aliens who were placed in proceedings before April 1, 1997, the effective date of IIRIRA.[10]

The BIA has also promulgated regulations that apply to aliens placed in proceedings before April 1, 1997. Under these regulations, an alien who is ordered deported in absentia may

---

deciding the inadmissibility or deportability of an alien.").

[9] *See also Lara-Torres v. Ashcroft*, 383 F.3d 968, 973 (9th Cir. 2004) (stating that no due process violation occurs where a petitioner would have been placed in deportation proceedings pre-IIRIRA, but is placed in removal proceedings post-IIRIRA).

[10] *See Lopez v. I.N.S.*, 184 F.3d 1097, 1099 n.2 (9th Cir. 1999) ("[Section] 1252b was repealed by IIRIRA, whose rules do not apply to aliens . . . who were in exclusion or deportation proceedings as of April 1, 1997.") (citations omitted); Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-625 (stating that IIRIRA's amendments to the INA do not apply to aliens in deportation proceedings prior to the effective date of IIRIRA).

12

file an unlimited number of motions to reopen.[11]  However, these regulations do not apply to an alien, such as Luntungan, who is placed in proceedings after April 1, 1997.[12]  An alien such as Luntungan is subject to the one motion rule laid out in 8 U.S.C. § 1229a(c)(7) and 8 C.F.R. § 1003.23(b)(4)(ii).[13]

---

[11]Title 8 C.F.R. § 1003.23(b)(4)(iii)(D) provides:

The time and numerical limitations set forth in paragraph (b)(1) of this section shall not apply to a motion to reopen filed pursuant to the provisions of paragraph (b)(4)(iii)(A) of this section.

Paragraph (b)(1) permits only one motion to reopen, and paragraph (b)(4)(iii)(A) refers to motions to reopen following an "order entered in absentia in deportation proceedings."  Thus, under § 1003.23(b)(4)(iii)(D), the numerical limit on motions to reopen does not apply to in absentia deportation orders.

[12]Luntungan concedes as much in his reply brief.

[13]*See Joshi v. Ashcroft*, 389 F.3d 732 (7th Cir. 2004) (stating that 8 C.F.R. § 1003.23(b)(4)(ii) deals with removal proceedings as distinguished from deportation proceedings and provides that "only one motion to reopen a removal proceeding may be filed"); *Akwada v. Ashcroft*, No. 02-2078, 2004 WL 2538212, at *4 n.5 (4th Cir. Nov. 10, 2004) ("There is no number limit on a motion to reopen to rescind an order entered in absentia in *deportation* or *exclusion* proceedings if an alien does not receive statutorily prescribed notice.  Akwada, however, was subject to *removal*

13

In *Borges v. Gonzales*, we stated in a footnote, "[w]hen an order of *removal* is issued in absentia . . . the regulations are more lenient and it appears that multiple motions to reopen may be filed by the alien." 402 F.3d 398, 402 n.5 (3d Cir. 2005) (emphasis added) (citing *Saakian v. INS*, 252 F.3d 21, 25 (1st Cir. 2001); 8 C.F.R. § 1003.23(b)(4)(iii)(D)). As the foregoing discussion demonstrates, this statement is questionable: An alien may not file multiple motions to reopen an in absentia order of removal, as distinguished from an in absentia order of deportation. Moreover, the *Borges* footnote is dicta, and it addresses an issue not central to the holding in that case.[14] Declining to follow the *Borges* footnote, we hold that under 8 U.S.C. § 1229a(c)(7) and 8 C.F.R. § 1003.23(b)(4)(ii), an alien ordered removed in absentia may file only one motion to reopen.

**B.**

Luntungan argues that although the INA permits but one motion to reopen, the numerical limit should be equitably

proceedings, to which stricter limits apply.") (citing 8 C.F.R. §§ 1003.23(b)(4)(ii) & (iii)(D)); *Fajardo v. I.N.S.*, 300 F.3d 1018, 1020 (9th Cir. 2002) (distinguishing the regulations governing in absentia removal orders from those governing in absentia deportation orders).

[14]The footnote, which appeared in the section of the *Borges* opinion devoted to facts and procedural history, was designed only to explain why the IJ allowed a second motion to reopen. *See* 402 F.3d at 402 n.5.

14

"tolled," allowing him to file multiple motions to reopen. Strictly defined, equitable tolling is "[t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Black's Law Dictionary* 579 (8th ed. 2004). Equitable tolling of statutes of limitations has a venerable history. *See Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (stating that in cases of fraud, equitable tolling "is read into every federal statute of limitation"); *Borges,* 402 F.3d at 406 (discussing the "old chancery rule" that a statute of limitations will be tolled for fraud).

In recent cases, we have applied equitable tolling to the time periods during which an alien may file a motion to reopen. As discussed above, *see supra* note 7, an alien ordered removed in absentia has 180 days to file a motion to reopen arguing that he failed to appear due to exceptional circumstances. *See* 8 U.S.C. 1229a(b)(5)(C)(I). We have held that this time period is subject to equitable tolling. *See Borges*, 402 F.3d at 406; *Mahmood v. Gonzales*, 427 F.3d 248, 249 (3d Cir. 2005).

We have not issued a precedential opinion deciding whether *numerical* limits on motions to reopen may be equitably tolled, and we note that other circuits have stated different views on the issue.[15] Even assuming, *arguendo*, that the one

_____

[15]The Ninth Circuit "recognizes equitable tolling of deadlines and numerical limits on motions to reopen or reconsider during periods when a petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner acts with due

15

motion limit is subject to equitable tolling, we hold that equitable tolling does not apply here.

Luntungan alleges that his first counsel, who filed the first motion to reopen, was ineffective. Under the doctrine of equitable tolling, Luntungan might be entitled to file a second motion. But in effect, Luntungan already received this form of relief: Luntungan's new counsel filed a second motion to reopen, which the IJ rejected because Luntungan failed to comply with the *Lozada* requirements. Only when Luntungan filed his *third* motion did the IJ deny it as numerically barred.

To demonstrate that the IJ erred in denying his third motion to reopen as numerically barred, Luntungan must show that equitable considerations should permit him to file the third motion. This showing would have to be based on unfairness surrounding the second motion to reopen. After all, if the second motion gave Luntungan a fair chance to be heard, there is no equitable reason to permit a third motion.

---

diligence in discovering the deception, fraud, or error." *Iturribarria v. INS*, 321 F.3d 889, 897 (9th Cir. 2003) (citations omitted); *see also Varela v. INS*, 204 F.3d 1237, 1240 (9th Cir. 2000); *Davies v. INS*, No. 00-1773, 2001 WL 608982 (4th Cir. June 5, 2001) (allowing equitable tolling). The Sixth Circuit, however, seems doubtful that the numerical limit may be equitably tolled and has "never held that equitable tolling applies to numerical limitations on motions to reopen." *Sene v. Gonzales*, No. 04-3794, 2006 WL 994173, at *4 (6th Cir. Apr. 14, 2006).

Luntungan does not allege that the attorney who filed the second motion defrauded him or otherwise provided ineffective assistance. Consequently, we conclude that the second motion gave Luntungan a fair chance to be heard. Equity requires nothing more, and we deny the petition for review.[16]

---

[16]Because we conclude that the one motion rule disposes of this case, we do not reach Luntungan's argument that he is also entitled to equitable tolling of the 180-day window in which an alien ordered removed in absentia must file a motion to reopen. *See* 8 U.S.C. § 1229a(b)(5)(C)(I).