# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 29, 2022

Lyle W. Cayce
Clerk

No. 20-60448

Ek Hong Djie; Yohana Dewi Mulyani,

*Petitioners*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order
of the Board of Immigration Appeals
BIA Nos. A077 736 992, A077 736 993

Before Davis, Willett, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

Petitioners Ek Hong Djie and Yohana Dewi Mulyani overstayed their permission to visit the United States 20 years ago, and they've been here ever since. For the second time after they were ordered removed, they asked the Board of Immigration Appeals to reopen their removal proceedings. For the second time, the Board refused. A statute bars the relief these petitioners seek. So we deny their petition.

No. 20-60448

I.

Petitioners are married to each other. Both are ethnically Chinese, both are Christians, and both were born in Indonesia. They entered the United States in 1998 with temporary, non-immigrant authorization. Then they overstayed that authorization.

In 2000, the Department of Homeland Security served petitioners with Notices to Appear (collectively, "the NTA"), charging them with removability. *See* 8 U.S.C. § 1227(a)(1)(C)(i). The NTA did not list the date and time of the scheduled removal hearing. But the Government soon provided petitioners' lawyer with that information. On May 8, 2000, when petitioners failed to appear at the removal hearing, an immigration judge ("IJ") ordered them removed *in absentia*. The Government never removed them.

In 2007, petitioners filed a motion to reopen their removal proceedings, arguing the NTA was inadequate. *Cf. INS v. Abudu*, 485 U.S. 94, 96–103 (1988) (giving a broad discussion of motions to reopen). An IJ denied that motion, and the Board of Immigration Appeals ("BIA") dismissed petitioners' appeal from the IJ's denial. They petitioned this court for review of the BIA's dismissal, and we denied the petition in part and dismissed it in part. *See Djie v. Holder*, 310 F. App'x 720, 721–22 (5th Cir. 2009) (per curiam).

In 2018, petitioners moved the BIA (directly this time, not via an IJ) to reopen their removal proceedings. As for substantive relief, they sought asylum and cancellation of removal. Because their motion would ordinarily be time-barred, *see* 8 U.S.C. § 1229a(c)(7)(C)(i), petitioners had to show country conditions in Indonesia had materially changed in the interval between 2000 (the time of the removal order) and 2018 (the time of the motion to reopen), *see id.* § 1229a(c)(7)(C)(ii). Petitioners made that

No. 20-60448

argument. And in support, they submitted 33 news articles as well as other pieces of evidence.

Petitioners further argued they satisfied all four statutory requirements for cancellation of removal. *See id.* § 1229b(b)(1). And they argued the NTA was insufficient because it didn't specify the time and date of their removal proceedings. *See Pereira v. Sessions*, 138 S. Ct. 2105 (2018); *infra*, Part II.C (explaining how an insufficient NTA fits with a cancellation-of-removal claim). They also asked the BIA to reopen the proceedings "*sua sponte*."[1]

The BIA refused to reopen. As for asylum, it held that, though the situation for Chinese Christians in Indonesia was grim, it was not substantially grimmer (in 2018) than it had been before (in 2000). Thus, the BIA concluded petitioners hadn't demonstrated changed country conditions. So petitioners didn't fit within the statute's exception to the time bar. In the alternative, the BIA concluded that even if the motion were not time-barred, petitioners had failed to make a *prima facie* showing of entitlement to asylum relief. As for cancellation of removal, the BIA held that, though the original NTA was insufficient under *Pereira*, the Government had cured the defect by notifying petitioners of the time and date of removal proceedings.

Petitioners sought review in this court. We have jurisdiction to review decisions of the BIA. *See, e.g.*, *Tibakweitira v. Wilkinson*, 986 F.3d 905, 909–10 (5th Cir. 2021). That includes the decision not to reopen, *see ibid.*, but it does not include the BIA's decision not to reopen *sua sponte*, *see Qorane v. Barr*, 919 F.3d 904, 911–12 (5th Cir. 2019).

---

[1] We put scare quotes around "*sua sponte*" because a reopening is not *sua sponte* where the alien requests it. The BIA nonetheless entertains motions for "*sua sponte*" reopening. *See, e.g.*, *In re J-J-*, 21 I. & N. Dec. 976, 984–85 (BIA 1997).

No. 20-60448

## II.

Petitioners focus on the BIA's failure to consider certain evidence of changed country conditions. They argue that amounted to an abuse of discretion. (They also argue the BIA committed various other errors.) So they ask us to vacate the BIA's decision and remand.

We cannot do so. We first (A) hold that petitioners' claims are number-barred. Then we (B) reject petitioners' resort to federal regulations and instead apply the statute as written. Finally, we (C) deny the petition without remanding to the BIA.

## A.

The INA imposes both a time bar and a number bar on motions to reopen, and both are relevant to this case. The time bar appears in 8 U.S.C. § 1229a(c)(7)(C)(i): "Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." Immediately thereafter is a statutory exception:

> There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under [8 U.S.C. §§ 1158 or 1251(b)(3)] *and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered*, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding.

8 U.S.C. § 1229a(c)(7)(C)(ii) (emphasis added). We call this the Time Bar Exception for Changed Country Conditions, or "TBECCC."[2]

---

[2] The statute contains a second exception to the time bar, but it's not relevant here. The second exception, in § 1229a(c)(7)(C)(iv), provides a "[s]pecial rule for battered

No. 20-60448

Petitioners seek asylum relief, *see id.* § 1158, and their motion to reopen "is based on changed country conditions" in Indonesia, *see id.* § 1229a(c)(7)(C)(ii). They pointed this out to the BIA, but the BIA refused to reopen on the ground that "country conditions" in Indonesia had not really "changed." *See ibid.* And that meant the petitioners' motion to reopen—which they'd filed years after the 90-day deadline—didn't qualify for the statute's timeliness exception. Thus, the parties correctly agree that if petitioners can show the BIA was wrong about changed country conditions, then their motion is not time-barred.

The number bar is a separate impediment to relief. The INA first lays out the number bar: Petitioners generally get one and only one motion to reopen. *See id.* § 1229a(c)(7)(A). Then the statute creates one and only one exception. In the same sentence as the number bar itself, Congress said: "[T]his limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv)." *Ibid.*; *see also supra*, n.2 (discussing the (C)(iv) exception). And everyone agrees that petitioners do not qualify for the single statutory exception to the number bar in (C)(iv). Thus, petitioners' motion to reopen is number-barred.

B.

Petitioners appear to recognize that they're number-barred by § 1229a(c)(7)(A). They therefore point to a federal regulation that, on their reading, creates an extra-statutory exception to the INA's number bar. *See* 8 C.F.R. § 1003.2(c) (the regulation relevant here, which applies to motions

---

spouses, children, and parents." To qualify for this special rule, a petitioner must satisfy four strict requirements. Petitioners didn't raise this second exception before the BIA or in their briefing in our court, and they seemed to admit at oral argument they don't qualify for it. *See* Oral Argument at 14:31–14:42 ("With respect to [that] exception, I think that was crafted only for battered . . . spouses, parents, or children.").

No. 20-60448

for "[r]eopening or reconsideration before the Board of Immigration Appeals"); *id.* § 1003.23(b) (substantively similar, but applicable to motions for "[r]eopening or reconsideration before the Immigration Court"). Petitioners also point to a BIA decision holding the same regulation "specifically waive[s] . . . the . . . numerical limitations" for motions to reopen. *Matter of J-G-*, 26 I. & N. Dec. 161, 168–69 (BIA 2013).

We (1) lay out 8 C.F.R. § 1003.2(c) and compare it to the INA. Then we (2) hold it's invalid because it contradicts the INA. And we (3) respond to counterarguments, including petitioners' argument that we should defer under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

1.

The Department of Justice ("DOJ") promulgated the relevant regulation to govern motions to reopen and motions to reconsider "before the Board of Immigration Appeals." 8 C.F.R. § 1003.2. Section 1003.2(c)(2) says: "Except as provided in paragraph (c)(3) of this section, a party may file only one motion to reopen deportation or exclusion proceedings[,] . . . and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." It thus contains the same time bar (90 days) and the same number bar (one) as the INA's reopening provision.

Section 1003.2(c)(3) of the regulation then provides exceptions. But here the regulation differs in an important way from the statute. As noted above, the INA provides a changed-country-conditions exception *only* to the *time* bar. *See supra*, n.2 and accompanying text (explaining the TBECCC). The regulation, by contrast, purports to apply the changed-country-conditions exception to the time *and number* bars. In relevant part, the regulation provides:

No. 20-60448

> The time *and numerical* limitations set forth in paragraph (c)(2) of this section shall not apply to a motion to reopen proceedings:
>
> . . .
>
> (ii) To apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing.

8 C.F.R. § 1003.2(c)(3) (emphasis added). The italicized text is the rub. It purports to extend the changed-country-conditions exception to a place where the INA does not go.

The INA statute and DOJ's regulation can thus be summarized as follows:

|  | INA Statute | DOJ Regulation | Same? |
|---|---|---|---|
| Time Bar | 90 days | 90 days | Yes |
| TBECCC | Yes | Yes | Yes |
| Number Bar | One | One | Yes |
| **Number Bar Exception for Changed Country Conditions** | **No** | **Yes** | **No** |

2.

To the extent a regulation attempts to carve out an exception from a clear statutory requirement, the regulation is invalid. *See, e.g.*, *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (2002) ("A regulation cannot stand if it is arbitrary, capricious, or manifestly contrary to the statute." (quotation omitted)); *Chevron*, 467 U.S. at 844 (similar); *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 433 (5th Cir. 2021) (similar). Because 8 C.F.R.

§ 1003.2(c)(3) attempts to carve out an exception from the number bar in 8 U.S.C. § 1229a(c)(7)(A), we hold it is invalid.

Start with the statute. It allows aliens to file one motion to reopen removal proceedings. *See* 8 U.S.C. § 1229a(c)(7)(A). And the phrasing makes clear there's only one exception: "An alien may file one motion to reopen proceedings under this section, except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv)." *Ibid.* So it's not that Congress merely laid out the rule in one spot and then created a single exception in another spot. Rather—and more pointedly—Congress's rule-creating provision *itself* specifies there's just one exception. And if Congress had wanted to create an exception for changed country conditions, § 1229a(c)(7)(C)(ii) is proof positive it knew how to do so. *See id.* § 1229a(c)(7)(C)(ii) (creating such an exception to the *time* bar but not to the *number* bar). If ever there was a provision fit for the canon of *expressio unius est exclusio alterius*, this is it. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 583 (2000) ("When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." (quotation omitted)).

Now consider the regulation. Put simply, it ignores the statute's text and creates its own exception. *See* 8 C.F.R. § 1003.2(c)(3). When a regulation attempts to override statutory text, the regulation loses every time—regulations can't punch holes in the rules Congress has laid down. So we hold the regulation is invalid. *See, e.g.*, *Ragsdale*, 535 U.S. at 86; *Huawei Techs.*, 2 F.4th at 433.

### 3.

We now turn to objections. We (a) explain why *Chevron* deference doesn't apply in this case. And we (b) address three counterarguments.

No. 20-60448

a.

Petitioners invoke *Chevron* deference. Casting 8 C.F.R. § 1003.2(c)(3) as DOJ's reasonable interpretation of 8 U.S.C. § 1229a(c), they ask us to defer to it.

We've already discussed the regulation's "interpretation of the statute," though it's generous to call it that. For the reasons we've given, we hold 8 C.F.R. § 1003.2(c)(3) is "manifestly contrary to the statute," so we will not defer to it. *See Chevron*, 467 U.S. at 844 ("[R]egulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."); *see also Scialabba v. Cuellar De Osorio*, 573 U.S. 41, 57 (2014) (plurality op.) ("Under *Chevron*, the statute's plain meaning controls, whatever the [agency] might have to say."). As discussed, the whole thrust of § 1003.2(c)(3) is to inject an exception into a statute that clearly omitted that very exception.

In the alternative, petitioners say that the BIA interpreted both the statute and the regulation in *Matter of J-G*, 26 I. & N. Dec. at 168–69. So they ask us to defer to *Matter of J-G-*, even if we wouldn't defer to the regulation standing alone.

But *Matter of J-G-* doesn't help. In that decision, the BIA started from the premise that "[t]he statute is silent regarding any numerical exception for motions to reopen to apply for asylum and withholding of removal based on changed country conditions." *Id.* at 168. It then pointed to "the current regulations, which specifically waive both the time and numerical limitations for such motions." *Ibid.* (citing 8 C.F.R. §§ 1003.2(c)(3)(ii), 1003.23(b)(4)(i)). And because "the legislative history" behind 8 U.S.C. § 1229a contains "no indication" that "Congress did not intend to also waive the numerical limitation, as the regulations had previously done," the BIA concluded that the regulations must control. *See id.* at 168–69.

9

That's all wrong. The statute lays out a mandatory rule, and that rule is binding unless the one enumerated exception applies. *See* 8 U.S.C. § 1229a(c)(7)(A). The statute's silence on *further* exceptions, far from licensing agency-made exceptions, implicitly rules them out. *See Christensen*, 529 U.S. at 583 ("When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." (quotation omitted)). Equally nonsensical is the BIA's reliance on the absence of on-point legislative history. *See Matter of J-G-*, 26 I. & N. Dec. at 168. The idea seems to be that, if Congress had intended to override DOJ's prior practice of recognizing multiple exceptions to the number bar, Congress would've said so in the legislative history. The problem is that Congress *did* say it wanted just one exception to the number bar—it said it in the text of the statute, as we've explained over and over again in this opinion. (And it doesn't make any difference whether the regulation or the statute came first.) Overemphasizing legislative history is one thing, but the BIA's decision to elevate the *absence* of legislative history over statutory text is miles beyond the pale and therefore not worthy of deference. *E.g.*, *Chevron*, 467 U.S. at 844.

b.

We now take up three interpretive counterarguments—two from petitioners and one from the Government. None moves the needle.

First, petitioners argue that "[t]he agency's interpretation of . . . 8 U.S.C. § 1229a(c)(7)(A) is . . . reasonable [because] the Act itself allows reopening for different grounds, without enforcing any numerical limitations." Put differently, Congress's decision to write an exception from the number bar "for battered spouses, children, and parents," *see* § 1229a(c)(7)(C)(iv), implies that Congress *also* must have wanted to create *other*, unwritten exceptions to the number bar. That of course would turn

10

No. 20-60448

*expressio unius est <u>exclusio</u> alterius* into *expressio unius est <u>inclusio</u> alterius. But see Christensen*, 529 U.S. at 583. This argument fails for obvious reasons.

Second, petitioners point to 8 U.S.C. § 1158(a)(2)(C), which generally limits aliens to filing one asylum application. *See* 8 U.S.C. § 1158(a)(2)(C) (withdrawing asylum eligibility from "an alien if the alien has previously applied for asylum and had such application denied"). That separate number bar has an exception for changed circumstances. *See id.* § 1158(a)(2)(D) ("An application for asylum of an alien may be considered, notwithstanding subparagraphs (B) and (C), if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B)."). Petitioners contend DOJ's interpretation of § 1229a must be reasonable because it "harmonizes" § 1229a and § 1158(a)(2)(D). This argument, like the first, attempts to use the existence of an exception in one place as evidence of an unwritten exception in another. Here, too, the argument gets things backwards. Congress's decision to include one exception in § 1158, coupled with its decision to omit a parallel exception in § 1229a, suggests Congress wanted the one but not the other.

Third, the Government (siding with petitioners on this point) argues that the TBECCC would be useless without a parallel exception to the number bar.[3] The Government says the TBECCC shows Congress's intent

---

[3] Just as "the government cannot waive the proper interpretation of Rule 52" in the plain-error context, the Government cannot forfeit or waive the proper interpretation of the INA in this case. *See United States v. Sanchez-Hernandez*, 931 F.3d 408, 411 (5th Cir. 2019); *see also Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper

"to allow noncitizens to bring [asylum] claims arising out of changed country conditions *at any time*." Gov't Suppl. Br. at 6. And "[i]t would . . . be illogical and contrary to that intent to prohibit the same changed country conditions [asylum] claims—the circumstances of which arise extemporaneously—due to a limitation on the number of permissible motions asserting such changed conditions." *Ibid.* Though the Government doesn't say it outright, this is best understood as a surplusage argument. Essentially, the Government contends that, if § 1229a's number bar has no (unwritten) exception for changed country conditions, then the (written) TBECCC is superfluous: Every time an alien qualifies for the TBECCC, he'll run straight into the number bar and be stuck without recourse.

But there's no surplusage. The Government's argument assumes that *if* an alien files a tardy motion to reopen and seeks asylum relief based on changed country conditions, *then* the alien will also have already filed a motion for reopening. And that if-then statement is false. There's no reason to believe every *untimely* motion to reopen, based on changed country conditions, will also be a *successive* motion to reopen.

Consider this hypothetical. At *T1*, an alien is ordered removed, and the proceedings are closed. But for one reason or another, removal doesn't happen. At *T2*, 10 years after *T1*, conditions in the alien's home country take a turn for the worse. And at *T3*, 20 years after *T1*, the alien moves the BIA for reopening *for the first time*, asserting an asylum claim based on changed country conditions. That alien's motion to reopen is *prima facie* time-barred.

---

construction of governing law."). As our court long ago explained, "it is well settled that a court is not bound to accept as controlling stipulations as to questions of law." *Equitable Life Assur. Soc. of U.S. v. MacGill*, 551 F.2d 978, 983 (5th Cir. 1977); *see also Wright v. Spaulding*, 939 F.3d 695, 704 n.6 (6th Cir. 2019) (Thapar, J.) ("Courts clearly have the power to determine the governing law independent of the parties' representations.").

But the motion also likely qualifies for the TBECCC. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii). And because this is his first motion to reopen, the number bar at § 1229a(c)(7)(A) doesn't apply to him.

Whatever one might make of the statute Congress wrote, Congress wrote it. And it is not—as the petitioners would have it—out of "harmony" with other statutes. Nor is what it says—as the Government would have it— "illogical" or superfluous. The number bar applies here.

## C.

Petitioners' final argument is that we should nevertheless remand their cause to the BIA to reconsider their cancellation-of-removal claim after *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021). We assume for purposes of this appeal that *Niz-Chavez* rendered the petitioners' NTA deficient and that the BIA erred in holding otherwise. We still can't remand the case to the BIA. That's for two reasons.

First, petitioners' motion to reopen remains number-barred. And the Supreme Court has told us: "If the INA precludes [petitioners] from getting the relief [they] seek[], . . . the right course on appeal is to take jurisdiction over the case, explain why that is so, and affirm the BIA's decision not to reopen." *Reyes Mata v. Lynch*, 576 U.S. 143, 149–50 (2015). Petitioners seek reopening. And the INA undoubtedly "precludes" petitioners from that relief—they can't show an entitlement to reopening, full stop, given the number bar in § 1229a(c)(7)(A). *See ibid.* Therefore, their petition for review must be denied, not remanded.

Second, we cannot remand a case to the BIA as a way to circumvent the limitations Congress imposed. For example, we've long held that Congress gave us no jurisdiction to review the BIA's denial of "*sua sponte*" reopening. *See Qorane*, 919 F.3d at 911–12. It would be an impermissible end-run around that limitation for us to remand an otherwise-barred petition for

fear that the BIA made a mistake. For similar if not identical reasons, we cannot look past Congress's number bar for fear that the BIA might have run afoul of *Niz-Chavez*. If the BIA wants to reopen, it can do so whenever it wants. *See Matter of G-D-*, 22 I. & N. Dec. 1132, 1135 (BIA 1999) (explaining that the BIA will reopen "*sua sponte*" if it is "persuaded that a *change in law* is sufficiently compelling that the extraordinary intervention of [its] *sua sponte* authority is warranted" (emphasis added)). But we cannot instruct it to do so via a remand order in the face of an insuperable statutory obstacle.

\*       \*       \*

Clear statutory text bars petitioners' motion to reopen. For that reason, we cannot and will not vacate the BIA's refusal to reopen. Nor may we remand the matter to the BIA. The petition for review is DENIED.