# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 12, 2025

Lyle W. Cayce
Clerk

No. 24-60590

———————————

Juan Jose Garcia Morin,

*Petitioner*,

*versus*

Pamela Bondi, *U.S. Attorney General*,

*Respondent*.

———————————————————————

Appeal from the Board of Immigration Appeals
Agency No. A037 004 574

———————————————————————

Before Haynes, Ho, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

The Government ordered Juan Jose Garcia Morin removed from the United States because he is an alien convicted of a removable firearm offense. For the second time after he was ordered removed, he asked the Board of Immigration Appeals to reopen his removal proceedings. The Board refused, finding that the Immigration and Nationality Act barred him from filing a second motion. We agree with the Board. We dismiss in part and deny in part his petition for review.

No. 24-60590

I

Garcia Morin is a citizen of Mexico. He was admitted into the United States in 1982 as a lawful permanent resident. Since then, he has been convicted twice for aggravated assault with a deadly weapon. In 2011, Garcia Morin was convicted for shooting his ex-wife in the head with a 0.22 caliber revolver. In 2018, Garcia Morin was convicted again—this time for assaulting a roommate with a knife. Garcia Morin is currently serving two concurrent sentences: 10 years of imprisonment for the 2011 conviction, and 5 years for the 2018 conviction.

Garcia Morin's felony convictions triggered his removal proceedings. In 2018, the Department of Homeland Security charged him with removability under Section 237(a)(2)(C) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(C). That provision applies to admitted aliens who are convicted of certain firearm offenses. *Ibid.* After a hearing, the immigration judge ("IJ") ordered Garcia Morin removed once he served his sentence and held that his felony convictions made him ineligible for various forms of relief from removal.[1]

In April 2020, the Board of Immigration Appeals ("BIA") affirmed the IJ's removal order. Garcia Morin then filed a petition for review of the BIA's decision, and a panel of this court dismissed his petition for review as untimely.

In May 2022—more than two years after the BIA's final removal order— Garcia Morin filed a motion to reopen or to reconsider and terminate

---

[1] The Government did not rely on Garcia Morin's second conviction as a basis for removal. ROA.1277 (citing Garcia Morin's conviction for aggravated assault with a deadly weapon, "to wit: Firearm," as the source of his removability). Still, the IJ referenced the second conviction as further support for Garcia Morin's ineligibility for relief from removal.

2

his removal proceedings. He argued that he was no longer removable in light of an intervening Supreme Court decision, *Borden v. United States*, 593 U.S. 420 (2021), or, in the alternative, that the decision entitled him to seek relief from removal. Because *Borden* confirmed that crimes with a minimum *mens rea* of recklessness do not qualify as aggravated felonies, Garcia Morin argued that his convictions were no longer a valid basis for removal. He also argued that the change in law constituted an "extraordinary circumstance" that justifies tolling the 90-day filing deadline for his motion to reopen, ROA.137–39, and he asked that the BIA reopen his case using its "*sua sponte*" authority.[2]

In January 2023, the BIA denied the motion. The BIA reasoned that Garcia Morin's charge of removability was based on his 2011 conviction for a firearm offense, not an aggravated felony, so *Borden* did not affect his removability. *See* ROA.1227–79 (Notice to Appear) (citing 8 U.S.C. § 1227(a)(2)(C) (firearm offenses), not 8 U.S.C § 1227(a)(2)(A)(iii) (aggravated felonies)). And even if *Borden* removed a restriction on Garcia Morin's potential eligibility for relief from removal, the change in law did not qualify as an "exceptional situation" warranting reopening his case. ROA.123–24. Second, the BIA concluded that Garcia Morin's motion was untimely and tolling the deadline would be inappropriate. Garcia Morin did not petition this court for review.

The saga didn't end there. On July 26, 2024—a year and a half after the BIA's denial of Garcia Morin's first motion—he filed a second motion to reopen using new counsel. Garcia Morin rehashed the same *Borden* arguments and again urged the BIA to exercise its "*sua sponte*" authority to

_____

[2] As we've noted, we use scare quotes around "*sua sponte*" because "a reopening is not *sua sponte* where the alien requests it." *Djie v. Garland*, 39 F.4th 280, 282 n.1 (5th Cir. 2022).

reopen his case. He argued that he qualifies for equitable tolling of both the time limit and numerical limit on motions to reopen. And he argued that refusing to apply *Borden* retroactively amounted to a due process violation.

Again, the BIA denied Garcia Morin's motion. This time, the BIA reasoned that Garcia Morin exceeded the statutory maximum number of motions he could file. It noted that the INA allows aliens to file only one motion to reopen, and this court has "not applied equitable tolling to the numerical limitation for motions to reopen." ROA.7. Relying on its previous decision, the BIA reminded Garcia Morin that *Borden* only concerns eligibility for relief from removal, not his removability. The BIA rejected Garcia Morin's request to reopen his removal proceedings "*sua sponte*."

Garcia Morin timely filed a petition for review in this court. We have jurisdiction to review final decisions of the BIA. *See* 8 U.S.C. § 1252. In general, we review the BIA's decision not to reopen removal proceedings under the "highly deferential abuse-of-discretion standard." *Lugo-Resendez v. Lynch*, 831 F.3d 337, 340 (5th Cir. 2016) (quotation omitted). But when the basis for an alien's removal is a conviction for a firearms offense, the INA strips our jurisdiction to review the denial of a motion to reopen except for "constitutional claims or questions of law." *Diaz v. Sessions*, 894 F.3d 222, 226 (5th Cir. 2018) (quotation omitted) (discussing 8 U.S.C. § 1252(a)(2)(C), (a)(2)(D)); *cf.* 8 U.S.C. § 1227(a)(2)(C).

On the other hand, we have no jurisdiction to review the BIA's decision not to *sua sponte* reopen Garcia Morin's removal proceedings. *See Qorane v. Barr*, 919 F.3d 904, 911–12 (5th Cir. 2019). Therefore, we dismiss that aspect of his petition and discuss his remaining arguments below.

## II

Garcia Morin recognizes that his second motion to reopen is both time-barred and number-barred. To overcome these barriers, he argues that

the BIA erred when it refused to equitably toll the filing deadline and numerical limitation on his motion to reopen. He argues that the BIA's decision amounted to an abuse of discretion and asks us to vacate and remand.

But the number bar is an "insuperable statutory obstacle" to the relief he seeks. *Djie v. Garland*, 39 F.4th 280, 288 (5th Cir. 2022). We first (A) explain that Garcia Morin is correct to concede that his claim is number-barred. Then we (B) reject Garcia Morin's invitation to apply equitable tolling to the number bar. Finally, we (C) address arguments to the contrary.

A

"The INA imposes both a time bar and a number bar on motions to reopen." *Id.* at 282. First, the time bar. Subject to a few exceptions, an alien's motion to reopen is timely only if he files it "within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i).[3] But this court applies the "same equitable tolling standard" to the deadline for filing a motion to reopen that it uses for limitations periods in other statutes. *Lugo-Resendez*, 831 F.3d at 344. If a removable alien shows that he "has been pursuing his rights diligently" and that "some extraordinary circumstance" "beyond his control" "stood in his way" and "prevented timely filing," then his motion to reopen is considered timely. *Ibid.* (quotations omitted).

"The number bar is a separate impediment to relief." *Djie*, 39 F.4th at 283. The INA generally authorizes "one and only one motion to reopen."

_____

[3] There are two statutory exceptions to the time bar for motions to reopen removal proceedings. The first permits an alien ordered removed to apply for asylum based on evidence of changed country conditions. 8 U.S.C. § 1229a(c)(7)(C)(ii). The second creates a "[s]pecial rule for battered spouses, children, and parents." *Id.* § 1229a(c)(7)(C)(iv). Those exceptions are not relevant here.

*Ibid.* (citing 8 U.S.C. § 1229a(c)(7)(A)). This bar is subject to "one and only one exception." *Ibid.* The limitation "shall not apply" to "prevent the filing of one motion to reopen described in subparagraph (C)(iv)"—in other words, motions filed by "battered spouses, children, and parents" meeting special criteria. 8 U.S.C. § 1229a(c)(7)(A), (c)(7)(C)(iv). No one argues that Garcia Morin qualifies for the statutory exception described in (C)(iv). So Garcia Morin correctly concedes his second motion to reopen is number-barred.

## B

Garcia Morin nonetheless contends the number bar is subject to "equitable tolling." How so? He points to equitable tolling of the *time bar* and asks that this court apply the same equitable tolling standards to the independent statutory restrictions imposed by the INA's *number bar*. Both Garcia Morin and the Government agree that we have never adopted a rule applying equitable tolling to the INA's numerical limit on motions to reopen. *Cf. Sandoval Argueta v. Bondi*, 137 F.4th 265, 275 (5th Cir. 2025) (holding the BIA did not abuse its discretion when it denied a second motion because the BIA's decision "seem[ed] to flow from the statutory language"). And applying a time-based rule of equitable tolling to a res-judicata-based rule like the number bar is by its terms a misnomer like green pastel redness. *Cf.* John Hart Ely, Democracy and Distrust: A Theory of Judicial Review 18 (1980). Today we reject the proposition that number bars are subject to equitable tolling.

We have previously rejected efforts to fashion new exceptions to the number bar as "overrid[ing] [the] statutory text." *Djie*, 39 F.4th at 283–85. In *Djie*, we reviewed a DOJ regulation that added an exception to the number

bar for motions to reopen before the BIA.[4] *Ibid.* (holding 8 C.F.R. § 1003.2(c)(3) invalid). Though the INA provides only for a "changed-country-conditions exception" to the time bar, the regulation "purport[ed] to apply" that exception "to the time *and number* bars." *Id.* at 284. We found the regulation invalid because it sought to "carve out an exception from a clear statutory requirement." *Ibid.* Congress's "phrasing ma[d]e clear there's only one exception" to the number bar, and the regulation "ignore[d] the statute's text" to create its own exception. *Id.* at 284–85. So the DOJ's addition was invalid because it extended the "changed-country-conditions exception to a place where the INA does not go." *Id.* at 284.

Applying equitable tolling to the number bar would be equally invalid. The INA's text could not be clearer: "An alien may file one motion to reopen proceedings under this section, except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv)." 8 U.S.C. § 1229a(c)(7)(A). "Congress's rule-creating provision *itself* specifies there's just one exception." *Djie*, 39 F.4th at 285. Because the statute "lays out a mandatory rule" and only "one enumerated exception," the "statute's silence on *further* exceptions, . . . implicitly rules them out." *Id.* at 285–86 (citing *Christensen v. Harris County*, 529 U.S. 576, 583 (2000) ("When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." (quotation omitted))). If the DOJ cannot "punch holes in the rules Congress has laid down," we cannot either. *Id.* at 285.

––––––––––––––––––––––––

[4] Aliens ordered removed may file motions to reopen with the IJ who ordered them removed, *see* 8 C.F.R. § 1003.23(b)(1), or with the BIA after it issues a final order of removal, *see id.* § 1003.2(a). The regulation at issue in *Djie* applied only to motions before the BIA. *Id.* § 1003.2(c)(3); *Djie*, 39 F.4th at 283–84.

To be sure, we've read an equitable exception into the statute of limitations. But reading an equitable exception into a numerical cap on motions to reopen is an altogether different undertaking. The Supreme Court made this very point when contrasting AEDPA's statutes of limitations with AEDPA's restrictions on second-or-successive petitions. *See Jones v. Hendrix*, 599 U.S. 465, 490–91 (2023). As the Court described, statutes of limitations "govern the *timeframe* for bringing a claim." *Id.* at 491. And "[e]quitable tolling of statutes of limitations has a venerable history." *Luntungan v. Att'y Gen. of the U.S.*, 449 F.3d 551, 557 (3d Cir. 2006). Indeed, "[i]t is hornbook law" that a federal statute of limitations is "normally subject to a rebuttable presumption in favor of equitable tolling." *Young v. United States*, 535 U.S. 43, 49 (2002); *Holland v. Florida*, 560 U.S. 631, 645–46 (2010) (quotation omitted). Courts assume that Congress intends to legislate "in light of this background [equitable] principle" absent the "clearest command" that Congress wants to override it. *Young*, 535 U.S. at 49–50; *Holland*, 560 U.S. at 646 (quotation omitted). That's true in the habeas context, and that's true here.

A number bar, however, involves a "significant difference." *Jones*, 599 U.S. at 491. Whether restricting the number of habeas petitions or the number of motions to reopen, a number bar is a substantive "restriction[]" on a petitioner's ability to obtain relief—an intentional "restraint" on the petitioner's cause of action. *Ibid.*; *Felker v. Turpin*, 518 U.S. 651, 664 (1996). Put differently, the number bar is a "modified res judicata rule." *Jones*, 599 U.S. at 491 (quoting *Felker*, 518 U.S. at 664). Unlike time limits, substantive limits and res judicata rules have no background equitable exceptions. Once again, what's true in the AEDPA context is also true here.

Congress's decision to impose a finite restriction on reopening motions reflects a key background principle: finality. By cabining an alien's ability to bring second or successive motions to reopen, the number bar

represents Congress's attempt to balance aliens' interest in having "a fair opportunity to develop and present their respective cases" with the "strong public interest in bringing litigation to a close." *INS v. Abudu*, 485 U.S. 94, 107 (1988). That's exactly what Congress was doing with AEDPA's limitations, too, striking "the appropriate balance between finality and error correction." *Jones*, 599 U.S. at 491. In both instances, the number bar represents Congress's deliberate choice to preserve finality. Were a court to superimpose an equitable workaround, we would be "effectively . . . adopting a presumption against finality as a substantive value." *Ibid.* That is Congress's choice to make, not ours.

C

Garcia Morin makes only one argument in favor of applying equitable tolling to the number bar. He tells us that "other circuit courts of appeal[s] have explicitly held that equitable tolling applies to not only the time limitations, but to the numerical [bar] as well." Blue Br. at 13. But none of the cases Garcia Morin cites change our conclusion.

First, several of our sister circuits have concluded that the number bar is a "non-jurisdictional claim processing rule." *Ruiz-Turcios v. U.S. Att'y Gen.*, 717 F.3d 847, 850 (11th Cir. 2013); *Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th Cir. 2004); *Iavorski v. INS*, 232 F.3d 124, 132 (2d Cir. 2000). This court agrees. *See Maradia v. Garland*, 18 F.4th 458, 462 n.6 (5th Cir. 2021). But some of our sister circuits say that *because* the number bar is non-jurisdictional, equitable tolling must be available. *See Iavorski*, 232 F.3d at 132 ("[N]othing in the [INA] . . . convinces us that these limitations were intended to be jurisdictional and therefore not subject to equitable tolling."); *Ruiz-Turcios*, 717 F.3d at 850 ("[T]he reasoning . . . supporting the conclusion that the 90–day deadline is a non-jurisdictional claim processing rule,

appears" to support "the related conclusion that the one-motion rule is a non-jurisdictional claim processing rule subject to equitable tolling.").

With respect, that conclusion does not follow. First, "Congress may preclude equitable tolling of even a nonjurisdictional statute of limitations." *United States v. Wong*, 575 U.S. 402, 408 n.2 (2015). Second, as we've discussed, equitable tolling is a longstanding practice *for statutes of limitations*, informed by the understanding that Congress usually leaves in place "courts' traditional equitable authority" to pause the timer on filing an action. *Holland*, 560 U.S. at 646 (quoting *Miller v. French*, 530 U.S. 327, 340 (2000)). None of these decisions explains why we can transpose that presumption onto the number bar. And it would be *especially* incongruous to invent a non-statutory exception to the number bar when Congress showed that it knows how to write such exceptions when it wants to do so. *See* 8 U.S.C. § 1229a(c)(7)(C)(iv) (statutory exception to number bar, which is inapplicable here).

The Second Circuit offers another reason to apply equitable tolling: that the BIA's *sua sponte* authority to reopen removal proceedings is "irreconcilable" with "the strict application" of the number bar. *Iavorski*, 232 F.3d at 132 (citing precursor to 8 C.F.R. § 1003.2(a)). Because the BIA can choose to reopen removal proceedings, the reasoning goes, courts must have equitable discretion to invent exceptions to the number bar. *Ibid.*

But the BIA's *sua sponte* authority to reopen removal proceedings has no bearing on whether courts may exercise our equitable powers in this context. The INA vests the Attorney General with broad discretion to make immigration decisions. *See, e.g.*, *Patel v. Garland*, 596 U.S. 328, 332–33 (2022) (summarizing the Attorney General's discretion over adjustment of status); *Kucana v. Holder*, 558 U.S. 233, 247–48 (2010) (listing other decisions committed to the "discretion of the Attorney General" (citation

omitted)). The Attorney General has delegated some of her discretion to the BIA. *See, e.g.*, 8 C.F.R. § 1003.1. And the Attorney General's broad grant of discretion to the BIA includes authorizing the Board to grant *sua sponte* reopening. *See id.* § 1003.2(a). Thus, *sua sponte* reopening is grounded in Congress's decision to vest discretion in the Attorney General and the Attorney General's decision to vest discretion in the BIA.

The considerations for courts are entirely different. The Constitution and the Judiciary Act of 1789 allow courts to hear cases in equity. *See* U.S. Const. art. III, § 2, cl. 1; Judiciary Act of 1789, Pub. L. No. 1-20 § 11, 1 Stat. 73, 78. And since the Founding, federal courts have had power to fashion equitable remedies. *See* Samuel L. Bray & Paul B. Miller, *Getting Into Equity*, 97 Notre Dame L. Rev. 1763, 1775 (2022) (Equity jurisdiction refers to "the sum total of the things that equity [is] 'in the habit of undertaking.'" (quoting *Jones v. Parker*, 163 Mass. 564, 566 (1895) (Holmes, J.))); *see also* Henry L. McClintock, Handbook of the Principles of Equity 97 (2d ed. 1948) ("By 'equity jurisdiction' is ordinarily meant, . . . the aggregate of the controversies in which the court may properly exercise its power to grant equitable relief.").

Several principles limit our equitable powers. We may only grant equitable relief if it has some basis in traditional equitable practice. *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 332 (1999) (courts lack "power to create remedies previously unknown to equity jurisprudence"); Bray & Miller, *supra*, at 1796. We also must ask if Congress has "displace[d]" by statute "the equitable relief that is traditionally available." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015). We have no basis to believe that *federal courts'* traditional equitable powers are somehow coterminous with *the BIA's* power to "accommodate special cases" through *sua sponte* reopening. *Iavorski*, 232 F.3d at 131–32. And that is especially true when Congress has displaced whatever discretion we might

otherwise have by statutorily limiting second and successive motions to reopen.

Finally, some of our sister circuits conclude that the Due Process Clause requires us to equitably toll the number bar—a conclusion that directly contradicts this court's precedent. The Ninth Circuit, for example, held that a petitioning alien was "denied due process" and entitled to equitable tolling of the number bar because his attorney's ineffective assistance "ultimately" cost him "the opportunity to have his first motion to reopen heard on the merits." *Ray v. Gonzales*, 439 F.3d 582, 588–90 (9th Cir. 2006); *see also Zhao v. INS*, 452 F.3d 154, 158–60 (2d Cir. 2006) (BIA erred when it refused to equitably toll the number bar for a second motion to reopen when the first motion was denied because of ineffective assistance of counsel).

But our court has held that the Due Process Clause doesn't apply to proceedings involving motions to reopen at all. Indeed, "[t]he decision to grant or deny a motion to reopen is purely discretionary. . . . Even if a moving party has established a prima facie case for relief, an IJ [or the BIA] can still deny a motion to reopen." *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 550 (5th Cir. 2006) (citing 8 C.F.R. § 1003.23(b)(1)(iv)).[5] So even if Garcia Morin is right that the attorney managing his first motion to reopen was incompetent, he has "no liberty interest at stake" in his motion to reopen "given its entirely discretionary nature." *Garcia-Gonzalez v. Garland*, 76 F.4th 455, 466 (5th Cir. 2023) (quotation omitted); *see also Finlay v. INS*, 210 F.3d 556, 557 (5th Cir. 2000) ("[T]he denial of discretionary relief does not

---

[5] 8 C.F.R. § 1003.23(b)(1)(iv) addresses an IJ's power to deny a motion to reopen. But the BIA also has the discretion to deny a motion to reopen "even if a moving party has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a).

No. 24-60590

rise to the level of a constitutional violation."). Garcia Morin's due process argument thus fails.

\*

We hold, as a matter of law, that equitable tolling is unavailable to the INA's number bar. The BIA therefore did not err in refusing to reopen Garcia Morin's removal proceeding. The petition for review is DISMISSED in part and DENIED in part.